45 N.J. Super. 574 (1957)
133 A.2d 649
MARION E. GRIMLEY, ET ALS., PLAINTIFFS-APPELLANTS,
v.
VILLAGE OF RIDGEWOOD, ET ALS., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 1957.
Decided July 8, 1957.
*576 Before Judges CLAPP, FRANCIS and STANTON.
Mr. Roy J. Grimley argued the cause for the appellants.
Mr. Edward F. Merrey, Jr., argued the cause for municipal defendants-respondents (Messrs. Merrey & Merrey, attorneys).
Mr. John S. Harrison argued the cause for defendant-respondent John S. Harrison (Messrs. Harrison & Brown, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
Respondent John S. Harrison, a member of the bar of this State, is the owner of premises known as 113 Prospect Street, Ridgewood, New Jersey. The property is in the two-family zone under the zoning ordinance and structurally is accommodated to such use. On his application, the board of adjustment recommended for special reasons in the particular case, N.J.S.A. 40:55-39(d), and the board of commissioners of the village granted, a variance to permit use of the first floor of the building as a law office. The grant was subject to certain conditions, namely, (1) that the ground floor be utilized for professional offices for not more than two lawyers and three stenographic employees, (2) that the premises at all times be owned by at least one of the lawyers regularly practicing law therein, (3) that the remainder of the building be occupied only for residential purposes and not by more than one family, (4) that no alteration be made of the exterior of the building, except for improvement by repairs and repainting, (5) that provision *577 be made for off-street parking on the premises for not less than eight automobiles, and that such facilities be open for use on Sundays and evenings by the Methodist Church or any church using the property adjoining on the north. The imposition of conditions is not uncommon and is a useful incident of variances. 1 Rathkopf, Zoning and Planning (3d ed. 1956), c. 49. The Law Division sustained the municipal action and the challenge to its validity has been continued by this appeal.
The original plaintiffs in the Law Division reside on Prospect Street in the one-family zone which begins about 400 feet south of respondent's lot. Henry T. Carey and Marion W. Carey, his wife, live at 168 Prospect Street, 750 feet south of Harrison, and Marion E. Grimley at 254 Prospect Street, which is 1,550 feet away in the same direction. The Careys are not participating in the appeal; it is being prosecuted by Marion E. Grimley alone. All of the property owners who were entitled to notice of the application for the variance approved the proposed use in writing. No resident of the two-family zone appeared in opposition.
The restriction sought to be relaxed appears in section 4 of the ordinance under the designation "One Family Zone Uses." It is made applicable to the two-family zone also and provides, among other things, that the
"residence may contain the professional office of its resident owner or lessee where the office work involves principally the personal service of the said owner or lessee. The office shall occupy not more than fifty percent of the first floor area of the residence. * * *."
A description of the locality under study is important. A map which portrays it graphically is therefore included:
*578 
*579 It will be observed that the two-family zone begins at the intersection of Hudson and Dayton streets (these streets extend east and west, and run into and appear almost in prolongation of each other) and Prospect Street. The zone goes south along both sides of Prospect Street for a distance of about 600 feet where the one-family district begins. On the north side of Hudson and Dayton streets the retail business zone starts. This is at most 250 feet from the Harrison property and, although not shown on this map, one block to the west of Prospect Street it extends for some distance both to the north and to the south.
Immediately adjoining the premises in question to the north and at the southeast corner of Prospect and Dayton streets is the Methodist Church. The church building is at the corner; next, to the east along Dayton Street, is a large Sunday school and administration building. To the rear and running along the entire rear line of the Harrison land is a sizeable parking lot for church use. The parking facilities to be provided by Harrison's agreement, which was a voluntary condition of the variance, will be used in common by parishioners and clients.
Just to the northwest, at the junction of Hudson and Dayton streets and diagonally across from this church, is an off-street bus terminal. Buses enroute to Paterson from the terminal traverse Prospect Street, which is a main traffic artery running into the business area and to the south becomes a county road. Across from the Methodist Church slightly to the northwest is a Catholic Church; it is bounded on the north, south and east sides by Hudson, Passaic and Prospect streets, and its front line is about 70 feet northwest of the premises in question.
The really important circumstances and the ones on which the case turns largely are the character of the neighborhood and the use to which the houses are put along both sides of Prospect Street from the retail business zone to the one-family district. In the two-family district along Prospect Street there are only 12 houses in addition to the churches and rectory. Of these 12, six contain one or more doctors' *580 offices and in these six are located 15 or 16 such offices. Only three of the doctors conform with the zone requirement of maintaining their residence on the premises.
On the east side of Prospect Street proceeding south from the junction of Dayton and Hudson streets are:
(1) 109  The Methodist Church, accessory buildings and parking lot;
(2) 113  Harrison's property. Here it is important to note that in 1952 the then owner was granted a variance to permit the use of the entire first floor as a doctor's office. This relaxed the requirements
(a) for residence therein by the physician (the then owner was not a physician but hoped and intended to rent to one) and
(b) that no more than 50% of the first floor area be occupied for the purpose of a professional office.
Although occupancy by a doctor had not been procured, no evidence was adduced to show an abandonment of the variance. Apparently during the three years that intervened between the grant and the contract of sale to Harrison such a professional tenant had not been found. The mere passage of that period of time under the circumstances would not warrant a finding of relinquishment. Board of Education of Borough of Fort Lee v. Mayor, etc. of Fort Lee, 31 N.J. Super. 22 (App. Div. 1954); cf. State v. Accera, 36 N.J. Super. 420 (App. Div. 1955); Haulenbeek v. Borough of Allenhurst, 136 N.J.L. 557 (E. & A. 1948); Campbell v. Board of Adjustment, 118 N.J.L. 116 (Sup. Ct. 1937). Moreover, although a variance not utilized confers no vested or absolute right in the property owner, the fact that it continued to exist without express or implied revocation by the municipality is of some significance as to its current life. Reed v. Board of Standards and Appeals, 255 N.Y. 126, 133, 174 N.E. 301, 302 (Ct. App. 1931).
(3) 119  a two-family house on a 51-foot lot used for residence purpose.
(4) 123  the "Professional Building" housing the offices of seven or eight doctors; a non-conforming use.
(5) 129  the one-family residence and office of Dr. Taylor.
(6) 135  a two-family residence.
(7) 139  the office of Dr. Philip R. Schumacher, a dentist, who does not reside there. A variance was granted in 1941 to permit the use by two doctors with residence by only one.
(8) 145  one-family residence and office of Dr. Antonino Rube. His southerly line is the beginning of the one-family zone.
On the westerly side of Prospect Street the six properties are occupied as follows:
*581 1. Block 263  the Mt. Carmel Church.
2. 102  a two-family residence.
3. 112  Dr. Vanderbeck, a one-family residence and professional office.
4. 118  a one-family residence.
5. 124  a one-family residence.
6. 130  Doctors Kritzler, Keating, Auchincloss and Richter have offices on the first floor; a tenant resides on the second. This use is pursuant to a variance allowed in 1952.
At this point the one-family zone begins.
As already indicated, the application for variance was made under N.J.S.A. 40:55-39(d) which authorizes the board of adjustment to recommend and the governing body to grant variances "in particular cases and for special reasons." A particular case is simply a given case, that is, one involving an individual piece of property for which relief is sought from the use restraint imposed on the zone where it is located. Schmidt v. Board of Adjustment, 9 N.J. 405, 421 (1952). No specific and comprehensive definition of "special reasons" has yet been pronounced in any of our cases. Obviously the term cannot conform to a slide rule or mathematical formula. As a basis for the grant of variances, it was intended to have a broader and more liberal significance than the "undue hardship" specified under subsection (c). Ward v. Scott (I), 11 N.J. 117, 122 (1952). It seems sufficient to say that the determination as to the circumstances which will constitute special reasons is committed to the quasi-judicial discretion of the board of adjustment under the supervisory discretion (which seems to partake of both the judicial and the legislative) of the local governing body, to be exercised favorably to the relaxation of the restraint imposed only when it can be done without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance. N.J.S.A. 40:55-39. Each case depends on its own facts, Raskin v. Town of Morristown, 21 N.J. 180, 198 (1956), and it is well known that once the discretion of the municipal agencies has been utilized, *582 the resultant variance is presumed to be regular and legal and the courts will not extinguish it unless the product of arbitrary, capricious or unreasonable action. Ward v. Scott (II), 16 N.J. 16 (1954).
In the present case, attention focuses at once on the fact that the basic use to which the premises are to be put is an authorized one in the district, namely, a professional use. The relaxation requested relates only to the lifting of the first floor space occupancy limitation for office purposes and to the elimination of the mandate for residence on the premises by the professional user. In this connection a factor not to be ignored is that both of these restrictions were removed in 1952 to permit rental of the entire first floor for the medical office of a non-resident physician. This variance was subsisting when Harrison became the owner, and the only change he seeks is authorization for law office rather than physician use. Although in our judgment the earlier grant should not be controlling as a matter of law, we agree that on the facts here it is a circumstance of some force in the search for special reasons. Ardolino v. Florham Park Board of Adjustment, 25 N.J. 94, 107 (1957).
The character of the neighborhood is always an important element in cases of this kind. Hann v. Borough of Sea Girt, 134 N.J.L. 74 (Sup. Ct. 1946); Bianchi v. Morey, 128 N.J.L. 219 (Sup. Ct. 1942); and see Note, "Zoning Variances and Exceptions," 103 U. Pa. L. Rev. 516, 534 (1955). This one may be described as unique with respect to the occupancy of the homes along both sides of Prospect Street between the retail business and the one-family zones. 50% of the houses, six out of 12, are functioning as doctors' or dentists' offices, some of which are conforming uses and some are either prior non-conforming uses or the result of variances. And they house offices for 15 or 16 such professional men. Of course, the use has left its mark upon this segment of the two-family residence zone. Consequently it cannot be said that the change under review would introduce a discordant note along the street. So the case is clearly distinguishable from Keller v. Town of Westfield, *583 39 N.J. Super. 430 (App. Div. 1956), cited by appellant.
Additional incidents, which play a part in the total circumstances pointing in the direction of the statutory special reasons, are the presence of the two churches close by the Harrison building. They undoubtedly produce considerable traffic. Bassett, Zoning 70 (1936); Note, "Churches and Zoning," 70 Harv. L. Rev. 1428, 1429 (1957). Moreover, Prospect Street is said to be a substantial artery of travel for automobiles and buses. The Harrison parking lot, which adjoins that of the Methodist church and which will be used in common by parishioners and clients, will ameliorate any possible adverse effect on traffic from the law office use.
A common strain of thinking by the municipal personnel appears to run through all of the variance proceedings. It is that this Prospect Street block has taken on the character of a professional office location. And aside from the factor of desirability for that purpose and the probability that in the hands of professional men the two-family houses will be maintained in good condition and appearance, they seem to feel that such use will serve as a buffer or, perhaps better, as a preventive measure against the deterioration of the street and the possible gradual encroachment of the business district. Viewed in this light the variance under attack, as well as the others in existence, may be considered as protection for the integrity of the one-family zone and in furtherance of the fundamental purposes of zoning.
It has been suggested that the conditions which beset Harrison's property are common to the other six residences along Prospect Street and therefore any change in the zoning regulations with respect to a new zone designation or to residence requirements should come about through the legislative process, that is, by amendment of the ordinance rather than by variances. It is true that a variance cannot be made to serve the purpose of amendment and that the function of the board of adjustment is to administer the zoning plan rather than to formulate or revise it. Moriarty v. Pozner, 21 N.J. 199, 209 (1956); Lumund v. Board of Adjustment, *584 4 N.J. 577, 582 (1950). The contention merits serious consideration but in our view does not operate as a bar to what was done here.
The 12 homes and offices in this 600-foot block do not comprise the entire two-family district even in this part of the village. The zone extends along some other streets in the area both to the east and west. But it is not suggested that anywhere else in the district is there present the unique situation of such a number of professional offices along two sides of a street and all within a single block separating retail business from the highest type of residential use. It is difficult to see how the problem facing the municipality and Harrison can be cured by the process of amendment. Individual amendment would give rise to the claim of spot zoning; and in the legislative judgment of the governing body, the matter may not require or justify either establishment of a separate professional use zone or the general elimination of the space or occupancy requirements for professional offices in the two-family zone. In our view, it is not the function of the courts to interfere with the conclusion reached by the local authorities that the peculiar and unusual situation existing along this street and with respect to Harrison's property can be best handled from the standpoint of the overall zoning plan, by granting the variance sought.
In any event, we are of the opinion that all of the circumstances discussed above sufficiently qualify as special reasons within the authority granted by the Legislature to require the conclusion that appellant has failed to demonstrate arbitrary or ultra vires action by either the board of adjustment or the board of commissioners.
Furthermore, we agree with the trial court that the attempt to challenge the validity of the 1952 variance came too late. R.R. 4:88-15(b)(3).
Affirmed.