29 N.J. 256 (1959)
148 A.2d 806
ELISE L. GRUNDLEHNER ET AL., PLAINTIFFS-RESPONDENTS,
v.
J. HENRY DANGLER ET AL., DEFENDANTS-APPELLANTS.
The Supreme Court of New Jersey.
Argued January 19, 1959.
Decided March 2, 1959.
*258 Mr. Lawrence A. Carton, Jr., argued the cause for the defendant-appellant J. Henry Dangler (Messrs. Roberts, Pillsbury & Carton, attorneys).
Mr. William C. Nowels argued the cause for the plaintiffs-respondents (Messrs. Mirne and Nowels, attorneys).
*259 The opinion of the court was delivered by JACOBS, J.
The Appellate Division, in an opinion reported at 51 N.J. Super. 53 (1958), set aside a zoning variance which had been recommended by Belmar's board of adjustment, approved by its board of commissioners, and sustained by the Law Division. We granted certification on the application of the appellant J. Henry Dangler. See 28 N.J. 57 (1958).
The appellant is the owner of the Dangler funeral home which is conducted in a 14-room dwelling house located at the corner of South Lake Drive and Eighth Avenue in Belmar. Under the terms of a 1953 revision of the local zoning ordinance, the surrounding area was placed in a residential zone confined to one-family dwelling houses but the pre-existing funeral home was properly continued as a nonconforming use. The first floor of the 2 1/2-story Dangler house is used in connection with the operation of the funeral home and the upper floors contain rooms which are vacant in addition to rooms used by Dangler as living quarters. The house has an attractive appearance with a frontage of 40 feet facing west on South Lake Drive, a depth of 40 feet on the Eighth Avenue side and a projection of ten feet at the rear of the house near the side distant from Eighth Avenue. A porch ten feet in width extends across the front of the house and also along the Eighth Avenue side. Steps lead from the rear of the porch along the Eighth Avenue side to a sidewalk and driveway in the rear of the house.
On February 14, 1957 Dangler applied for a building permit to construct an extension which would be ten feet in width, 26 feet in length and 11 feet in height. The extension would join the building at a point between the rear porch steps and the ten-foot projection and would have the effect of straightening the back portion of the building. It would contain an office, smoking room, elevator and stairway to the rear of the funeral home. The application also sought permission to make a ten by 24 foot addition to Dangler's garage. On February 25, 1957 the building inspector *260 denied the application in its entirety. Thereafter Dangler appealed to the board of adjustment, which conducted a hearing on March 8, 1957. At the hearing Dangler appeared in support of his application and several objectors, including the plaintiffs Elise L. Grundlehner and Henrietta M. Eicks, appeared in opposition. Mrs. Grundlehner resides on Eighth Avenue in a house which was acquired in 1953 with full knowledge that the Dangler premises were being operated as a funeral home. Mrs. Eicks owns a lot on Eighth Avenue which does not bear a house and she believes that the proposed addition will lessen the value of her land.
Mr. Dangler's position before the board of adjustment was that the proposed addition would not entail any increased business in the funeral home and would lessen the incidents which residents in the area might find objectionable. As he put it, he has no "bargain sales" in his business, his proposed addition contemplates no "extension of the use" although it contemplates a physical extension of the building, and he is "trying to improve the place for the people who come there and trying to get rid of some of the unsightly things outside." Mr. Pierce, a member of the board of adjustment, expressed the view that the application involved a small extension which would "hide the operation of his business"; Mr. Heyniger, a member of the board, stressed the fact that the operation of the business would not be enlarged; and Mr. Bennett, a member of the board, noted that the addition would make "the normal operation of the business less objectionable and less obvious" since Dangler is "now forced to bring remains out along the side and with the new addition will take the caskets from the door to the hearse." Mr. Bennett also noted that whether the application was granted or denied the funeral home would in all likelihood continue to operate. The board, without adopting any formal resolution embodying basic and ultimate factual findings, recommended that Dangler's application be granted in its entirety. On April 9, 1957 the board of commissioners, after having considered the proceedings before the board of adjustment and having viewed the premises, *261 approved the recommendation and granted a variance insofar as the proposed addition to the building was concerned, but disapproved the recommendation and denied a variance for the proposed addition to the garage. Its formal resolution set forth that the granted variance would correct "a peculiar and exceptional practical difficulty and hardship," would be "without substantial detriment to the public good," and "would not substantially impair the intent and purpose of the zoning plan and the zoning ordinance."
On April 24, 1957 the plaintiffs filed their complaint in the Law Division seeking to set aside the resolution of the board of commissioners insofar as it approved the variance for the proposed addition to the funeral home itself. Answer was duly filed and the matter was tried before Superior Court Judge Ewart, who found that the variance contemplated "a small, rather than a substantial enlargement of the Dangler Funeral Home building" and that the relief granted "will not be detrimental to the public good and will not substantially impair the intent and purpose of the zone plan and ordinance." His dismissal of the plaintiffs' action was appealed to the Appellate Division which, on June 27, 1958 reversed on its finding that the size of the proposed extension "raises doubt" as to whether it is "insubstantial," that it did not see how Dangler could prove that the alteration would be "insubstantial," and that the action of the board of commissioners was therefore "unreasonable." See 51 N.J. Super. at page 61.
The appellant urges that the proposed structural addition would in no wise increase the number of funerals but would allow removal of caskets directly from the building to adjacent vehicles in the rear parking lot, thereby avoiding the undesirable incidents of having the caskets carried to the street for placement in vehicles waiting there; that the new smoking room would eliminate the milling and crowding by patrons along the street and facilitate matters for them within the funeral home; that the elevator would alleviate the burdensome task of lifting and aid in the *262 elimination of the present need for carrying caskets to the street; that the addition would not be detrimental to the public good or impair the intent and purpose of the zoning ordinance but would improve the appearance of the neighborhood and remove or greatly reduce the objectionable features of the presently existing nonconforming use; and that the setting aside of the variance was erroneous since there was no showing that the board of commissioners had acted arbitrarily or in abuse of its discretionary authority under N.J.S.A. 40:55-39(d). On the other hand, the respondents urge that the proposed addition is simply intended to aid the conduct of the appellant's business and would constitute an improper extension of the pre-existing nonconforming use; and they take the position that the variance was properly set aside since it allowed a substantial enlargement, was not supported by sufficient evidence and findings of special reasons and non-impairment of the zone plan, and did not meet the statutory criteria set forth in N.J.S.A. 40:55-39(d). Compare Ward v. Scott, 11 N.J. 117 (1952), 16 N.J. 16 (1954) with Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189 (1955). See Moriarty v. Pozner, 36 N.J. Super. 586 (App. Div. 1955), reversed 21 N.J. 199 (1956); Whitehead v. Kearny Zoning Bd. of Adjustment, 51 N.J. Super. 560, 568 (App. Div. 1958); Grimley v. Ridgewood Village, 45 N.J. Super. 574, 581 (App. Div. 1957), certification denied 25 N.J. 102 (1957); Shestack, "Municipal Corporations," 11 Rutgers L. Rev. 96, 108 (1956); Schloeder, "Boards of Adjustment and Subdivision (D) Die Together," 81 N.J.L.J. 141 (1958); Note, "Zoning Under the Constitution of 1947," 9 Rutgers L. Rev. 697, 709 (1955).
When the Zoning Act of 1928 was passed (L. 1928, c. 274) it contained a provision to the effect that any nonconforming use or structure existing at the time of the passage of the local zoning ordinance may be continued as of right. R.S. 40:55-48. This provision, comparable to that contained in zoning enactments throughout the country, was included because of urgent practical necessities and suggested constitutional *263 requirements of due process. See Ranney v. Istituto Pontificio Delle Maestre Filippini, supra, 20 N.J. at page 195; Jones v. City of Los Angeles, 211 Cal. 304, 295 P. 14, 17 (Sup. Ct. 1931); 1 Yokley, Zoning Law and Practices § 147 (2d ed. 1953). Shortly after the passage of the Zoning Act our courts stated that the spirit of the law was to restrict nonconforming uses and that while R.S. 40:55-48 permitted them to continue as of right it did not permit their enlargement as of right. See Conaway v. Atlantic City, 107 N.J.L. 404, 407 (Sup. Ct. 1931); DeVito v. Pearsall, 115 N.J.L. 323, 325 (Sup. Ct. 1935); cf. Green v. Board of Commissioners of City of Newark, 131 N.J.L. 336, 338 (Sup. Ct. 1944); Sitgreaves v. Board of Adjustment of Town of Nutley, 136 N.J.L. 21, 27 (Sup. Ct. 1947). Since the nonconforming uses were generally discordant to their surroundings it was the fervent hope that they would in time wither and die and be replaced by conforming uses. See 2 Metzenbaum, Law of Zoning 1210 et seq. (2d ed. 1955). But actual experiences have indicated otherwise and in some jurisdictions the authorities have deemed it necessary to take legislative steps towards compelling their early abandonment. See Grant v. Mayor and City Council of Baltimore, 212 Md. 301, 129 A.2d 363 (Ct. App. 1957); Standard Oil Co. v. City of Tallahassee, 183 F.2d 410 (5 Cir. 1950), certiorari denied 340 U.S. 892, 71 S.Ct. 208, 95 L.Ed. 647 (1950); Note, "Nonconforming Uses: A Rationale and an Approach," 102 U. Pa. L. Rev. 91 (1953). In our State there have been no such legislative steps (United Advertising Corp. v. Borough of Raritan, 11 N.J. 144, 152 (1952)) and our courts have continued with their application of the doctrine that nonconforming uses may not be enlarged as of right except where the enlargement is so negligible or insubstantial that it does not fairly warrant judicial or administrative notice or interference. See Heagen v. Borough of Allendale, 42 N.J. Super. 472 (App. Div. 1956); Kramer v. Town of Montclair, 33 N.J. Super. 16 (App. Div. 1954); Home Fuel Oil Co. of Ridgewood v. Bd. of Adjust. of Borough of Glen *264 Rock, 5 N.J. Super. 63, 67 (App. Div. 1949); cf. Lane v. Bigelow, 135 N.J.L. 195, 199 (E. & A. 1946).
The restriction against the enlargement of a non-conforming use as of right applies to the physical structure as well as its use. See Rockleigh Borough, Bergen County v. Astral Industries, 29 N.J. Super. 154, 161 (App. Div. 1953). And where there is doubt as to whether the enlargement is substantial rather than insubstantial it is to be resolved against the enlargement. See Heagen v. Borough of Allendale, supra, 42 N.J. Super. at page 482; Martin v. Cestone, 33 N.J. Super. 267, 271 (App. Div. 1954). In the instant matter, it appears clear that the proposed addition, which would add 260 square feet to the 1600 or 1700 square feet now on the first floor of the building, may not fairly be viewed as a negligible or insubstantial enlargement which the appellant could make as of right; the provision in R.S. 40:55-48 enabling continuance of his pre-existing nonconforming use gave him no such power and the implementing terms of Belmar's zoning ordinance expressly prohibited the extension or enlargement of any structure "devoted to or containing a nonconforming use." See Art. 14, sec. 1402. Since under the terms of the ordinance the appellant could not construct his proposed addition as of right, the building inspector properly refused to issue the permit, thus leaving the appellant with his privilege of appealing to the board of adjustment and seeking a discretionary variance under N.J.S.A. 40:55-39 (d). See Ward v. Scott, supra; Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64, 77 (1952); Mistretta v. City of Newark, 33 N.J. Super. 205 (Law Div. 1954).
The granting of variances from general zoning restrictions has been the subject of considerable discussion. See Ranney v. Istituto Pontificio Delle Maestre Filippini, supra; Ward v. Scott, supra; Gaylord, "Zoning: Variances, Exceptions and Conditional Use Permits in California," 5 U.C.L.A.L. Rev. 179 (1958); Green, "The Power of the Zoning Board of Adjustment to Grant Variances from the Zoning Ordinance," 29 N.C.L. Rev. 244 (1951); Note, "Zoning *265 Variances and Exceptions," 103 U. Pa. L. Rev. 516 (1955). Some students believe that municipalities should not have any authority to grant individual variances; their stand is that variances are zoning leaks which necessarily tend to destroy the basic zoning structure and should not be tolerated at all. Other students, equally conscientious, believe that municipalities should have express authority to grant exceptional variances which do not substantially impair the zoning plan; their stand is that if no such safety valves are available, the adverse effects of the unbending zoning barriers and the individual injustices they entail may impair public support and thus bring about the destruction of the basic zoning structure. Admittedly, the choice of approach is with the legislative rather than the judicial branch of government, and our Legislature has thus far consistently aligned itself with those who believe that a zoning plan should always be accompanied by a justly controlled variance power. See N.J.S.A. 40:55-39(d); Ward v. Scott, supra.
When the Zoning Act of 1928 was originally passed it contained a paragraph which authorized the board of adjustment to grant a variance upon a specified showing, and a separate paragraph which authorized it to recommend action by the municipal governing body. The former paragraph led to N.J.S.A. 40:55-39(c) and the latter to N.J.S.A. 40:55-39(d). In 1948 and 1949 there were amendments which resulted in the narrowing of paragraph (c) and the broadening of paragraph (d). See L. 1948, c. 305 and L. 1949, c. 242. Under paragraph (d) the board of adjustment was (as it now is) authorized to recommend "in particular cases and for special reasons" the granting of a variance to allow a structure or use in a district restricted against such structure or use, and the governing body was (as it now is) authorized to approve or disapprove the recommendation. In Monmouth Lumber Co. v. Ocean Township, supra, the court held that there was no justification for judicial importation of the restrictive requirements of paragraph (c) into the broad terms of paragraph (d). And in Ward v. Scott, supra, 11 N.J. at pages 121-122, the court *266 reaffirmed the holding in Monmouth and rejected the contention that the statute failed to embody a sufficient norm or standard; it was noted that R.S. 40:55-32 contains adequate affirmative criteria as to the proper zoning objectives, including the promotion of health, morals or the general welfare and that N.J.S.A. 40:55-39 contains adequate negative criteria against allowance of any variance unless it can be granted "without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." After the holding in Ward v. Scott, supra, the Legislature again amended N.J.S.A. 40:55-39; it further narrowed paragraph (c) but re-enacted the broad terms of paragraph (d) without any change whatever. See L. 1953, c. 288. In 1956, and again in 1957, bills seeking to eliminate paragraph (d) in its entirety were introduced in the Assembly but were never reported out of committee. See Assembly No. 395 (1956); Assembly No. 67 (1957).
Variances allowing new nonconforming uses have generally been viewed with hostility by our courts, which have consistently stressed that variances tend to impair sound zoning and should be granted only sparingly and with great caution. See Beirn v. Morris, 14 N.J. 529, 536 (1954); Lumund v. Bd. of Adjustment of Borough of Rutherford, 4 N.J. 577, 585 (1950). But while stressing their thesis our courts have, with equal consistency, acknowledged that under our triune system the determination as to whether there should be an exceptional variance power rests entirely with the Legislature and not at all with the court; that where a variance is granted by municipal officials pursuant to statutory authority it is entitled to the customary judicial presumption of validity; and that the court may not intervene to set aside such variance except upon a showing that the action of the municipal officials was arbitrary, capricious or in manifest abuse of their discretionary authority. See Ward v. Scott, supra, 16 N.J. at page 23; Rexon v. Bd. of Adjustment of Borough of Haddonfield, 10 N.J. 1, 7 (1952); Schmidt v. Board of Adjustment of City of Newark, *267 9 N.J. 405, 423 (1952); Rain or Shine Box Lunch Co. v. Newark Bd. of Adjust., 53 N.J. Super. 252, 262 (App. Div. 1958).
In determining whether the grant of a variance is to be upheld or set aside the court must consider each case on its own particular facts. See Grimley v. Ridgewood Village, supra, 45 N.J. Super. at page 581; Hann v. Borough of Sea Girt, 134 N.J.L. 74, 76 (Sup. Ct. 1946); Bianchi v. Morey, 128 N.J.L. 219, 221 (Sup. Ct. 1942). The use being permitted must be viewed in the light of the surroundings as they actually are and that will include all "uses which by whatever authority exist in a neighborhood." See Bianchi v. Morey, supra, 128 N.J.L. at page 221; Grimley v. Ridgewood Village, supra, 45 N.J. Super. at page 582. In Grimley the court sustained a variance which enabled the respondent's operation of his law office in a dwelling house structure in a residential zone; the court, in an opinion by Judge (now Justice) Francis, found that in view of the actual surroundings and the other attendant circumstances there was no warrant for judicial interference with the municipal finding that there were "special reasons" within N.J.S.A. 40:55-39(d) and that the variance would not entail any "substantial detriment" to the public good and would not "substantially impair" the zoning plan. In 165 Augusta Street, Inc., v. Collins, 9 N.J. 259 (1952) this court, in an opinion by Justice Burling, sustained a variance under N.J.S.A. 40:55-39 (c) which enabled the construction of a gasoline station on land partly zoned for residential purposes. See Hann v. Borough of Sea Girt, supra; Schaible v. Board of Adjustment of Millburn Tp., 134 N.J.L. 473 (Sup. Ct. 1946); Bianchi v. Morey, supra; Progress Holding Co. v. Bd. of Adjustment of East Orange, 118 N.J.L. 135 (Sup. Ct. 1937); Gabrielson v. Borough of Glen Ridge, 13 N.J. Misc. 142 (Sup. Ct. 1935). And in Sandler v. Board of Com'rs of City of Trenton, 126 N.J.L. 392 (Sup. St. 1941), the court, in an opinion by Justice Case, sustained a variance which had been granted to enable a dwelling house in a residential *268 zone to be used as a funeral home. To the same effect see Griggs v. City of Paterson, 132 N.J.L. 145 (Sup. Ct. 1944); cf. Marrocco v. Bd. of Adjustment of City of Passaic, 5 N.J. Super. 94 (App. Div. 1949), certification denied 3 N.J. 379 (1949).
In Ward v. Scott, supra, the board of adjustment recommended that a variance be granted under N.J.S.A. 40:55-39 (d) to enable the construction of a shopping center on land which was partially within a residential zone and partially within a business zone; the recommendation was approved by the town council and its action was sustained by the Law Division. This court first remanded the proceedings to the municipal officials because of the insufficiency of their findings but after this deficiency was formally remedied we sustained the grant of the variance; in the course of our opinion we expressed the following sentiments which we now reaffirm:
"Earlier judicial views have been displaced by recent cases in this court which hold that municipal governing bodies may exercise broad powers in their zoning regulation of land and structures. See Fischer v. Township of Bedminster, 11 N.J. 194, 201 (1952); Lionshead Lakes, Inc., v. Township of Wayne, 10 N.J. 165 (1952), appeal dismissed, 344 U.S. 919, 73 S.Ct. 386, 97 L.Ed. 708 (1953); Duffcon Concrete Products v. Borough of Cresskill, 1 N.J. 509 (1949). Although these cases have been the subject of varying comments, we are convinced that they are in furtherance of constitutional and statutory objectives and the public welfare generally. Compare Haar, Zoning for Minimum Standards: The Wayne Township Case, 66 Harv. L. Rev. 1051 (1953), with Nolan and Horack, How Small a House?  Zoning for Minimum Space Requirements, 67 Harv. L. Rev. 967 (1954). See 4 Rutgers L. Rev. 71 (1950); 6 Rutgers L. Rev. 93 (1951); 7 Rutgers L. Rev. 85 (1952); 8 Rutgers L. Rev. 73 (1953). But we are equally convinced that the sanctioning of far-reaching zoning restrictions must fairly be accompanied by sympathetic recognition that there will arise, from time to time, exceptional situations which will justly call for individual variances within the prescribed legislative conditions and standards. See N.J.S.A. 40:55-39; Ward v. Scott, 11 N.J. 117, 122 (1952). Local officials who are thoroughly familiar with their community's characteristics and interests and are the proper representatives of its people, are undoubtedly the best equipped to pass initially on such applications for variance. And their determinations should not be approached with a general feeling of suspicion, for as Justice *269 Holmes has properly admonished: `Universal distrust creates universal incompetence.' Graham v. United States, 231 U.S. 474, 480, 34 S.Ct. 148, 151, 58 L.Ed. 319, 324 (1913). Where * * * the application for variance has been given careful and conscientious consideration by the zoning board and the town council and has been acted upon by both of them in strict conformity with the procedural and substantive terms of the statute, the ultimate interests of effective zoning will be advanced by permitting the action of the municipal officials to stand, in the absence of an affirmative showing that it was manifestly in abuse of their discretionary authority. Cf. Cobble Close Farm v. Bd. of Adjustment of Middletown Tp., 10 N.J. 442, 453 (1952); Schmidt v. Board of Adjustment of City of Newark, supra." 16 N.J. at pages 22-23.
Since a variance may, upon a proper showing of special reasons within N.J.S.A. 40:55-39(d), be granted to create a new nonconforming use in a residential zone it may clearly be granted to enlarge a pre-existing nonconforming use; it is entirely evident that a limited extension of a pre-existing professional office, gasoline station, funeral home, shopping center or other business activity in a residential zone, will ordinarily be less likely to involve substantial impairment of the zoning plan than will the creation of a wholly new use of such nature. In Monmouth Lumber Co. v. Ocean Township, supra, 9 N.J. at page 77, Justice Burling expressly noted for this court that "a request for an enlargement of a nonconforming use is a request for a variance" which may be initiated under N.J.S.A. 40:55-39(d) or under other pertinent provisions of the statute. See also Green v. Board of Commissioners of City of Newark, supra, 139 N.J.L. at page 338. In McMahon v. Board of Zoning Appeals, 140 Conn. 433, 101 A.2d 284 (1953), the Supreme Court of Errors of Connecticut sustained a variance which the municipal officials had granted to enable a nonconforming dairy in a residential zone to use adjacent land, in connection with a rearrangement of the flow of its traffic, to relieve street congestion. In In re Blanarik, 375 Pa. 209, 100 A.2d 58 (1953), the Supreme Court of Pennsylvania sustained a lower court order which permitted enlargement of a nonconforming grocery store in a residential area. And in Amero v. Board of Appeal of *270 City of Gloucester, 283 Mass. 45, 186 N.E. 61 (1933), the Supreme Judicial Court of Massachusetts sustained a municipal grant of a variance for the addition of a pump at a nonconforming gasoline station in a residential zone. See Fiorilla v. Zoning Board of Appeals, 144 Conn. 275, 129 A.2d 619 (Sup. Ct. Err. 1957); Tau Alpha Holding Corp. v. Board of Adjustments, 126 Fla. 858, 171 So. 819 (Sup. Ct. 1937); Bassett, Zoning 109 (1940).
In urging that the variance granted by the municipal officials should be sustained, the appellant Dangler apparently rests upon the assumption that the municipal officials actually found that it would not result in any increase of business or detract from the present appearance of his premises as a dwelling house, would avoid the undesirable incidents of having the caskets carried to the street, would eliminate milling and crowding by patrons along the street while facilitating matters for them within the funeral home, and would alleviate the operator's tasks of lifting and carrying the caskets. Such basic factual findings would suggest a minimization rather than an intensification of the discordant use in the residential neighborhood and would seemingly furnish sound grounds for ultimate findings that there were "special reasons" within the contemplation of N.J.S.A. 40:55-39(d) as construed in Ward v. Scott, supra, and that the variance could be granted without "substantial detriment" to the public good and would not "substantially impair" the intent and purpose of the zone plan and zoning ordinance. But the difficulty is that, while we believe that the factual presentation by Dangler may be considered legally sufficient (cf. Bierce v. Gross, 47 N.J. Super. 148, 158 (App. Div. 1957)), the record before us does not adequately embody the necessary administrative findings; thus there was no formal resolution by the board of adjustment setting forth the essential basic and ultimate factual findings as contemplated by Tomko v. Vissers, 21 N.J. 226, 239 (1956); and the formal resolution by the board of commissioners failed to embody the minimum findings required by all of our cases for the grant of a variance under N.J.S.A. *271 40:55-39(d). See Ward v. Scott, supra, 11 N.J. at pages 117, 128; Bierce v. Gross, supra; Wharton Sand & Stone Co. v. Montville Tp., 39 N.J. Super. 278, 282 (App. Div. 1956); Skaf v. Zoning Bd. of Adjustment of City of Asbury Park, 35 N.J. Super. 215, 222 (App. Div. 1955).
The resolution by the board of commissioners simply set forth that it had considered the proceedings before the board of adjustment and had inspected the premises and found that the granting of the addition to the funeral home would "correct a peculiar and exceptional practical difficulty and hardship to the owner," would be without "substantial detriment" to the public good and would not "substantially impair" the zoning plan. It did not set forth any of the facts disclosed by the board's inspection. See Giordano v. City Commission of City of Newark, 2 N.J. 585, 589 (1949); cf. Tomko v. Vissers, supra, 21 N.J. at page 240; Ranney v. Istituto Pontificio Delle Maestre Filippini, supra, 20 N.J. at page 200; Dolan v. DeCapua, 16 N.J. 599, 610 (1954); Rain or Shine Box Lunch Co. v. Newark Board of Adjust., supra, 53 N.J. Super. at page 263; Izenberg v. Bd. of Adjustment of City of Paterson, 35 N.J. Super. 583, 592 (App. Div. 1955). It failed to make any basic findings as to whether the variance would result in increase of business or in avoidance of undesirable street incidents or in elimination of milling and crowding by patrons along the street or as to other pertinent factors. And it failed to specify the nature of the difficulty and hardship which was the single affirmative ground for relief expressed in the resolution. See Skaf v. Zoning Bd. of Adjustment of City of Asbury Park, supra, 35 N.J. Super. at page 222. The grant of any variance under N.J.S.A. 40:55-39(d) is exceptional relief which must meet not only the negative statutory criteria but also the affirmative statutory requirement of one or more "special reasons" which must be set forth by the municipal officials in clear and explicit terms and in detail (Whitehead v. Kearny Zoning Bd. of Adjustment, supra, 51 N.J. Super. at page 570); this requirement is of the utmost importance not only in *272 insuring just and responsible municipal action but also in affording to the court a proper basis for judicial review. See Pennsylvania Railroad Co. v. Dept. of Public Utilities, 14 N.J. 411, 427 (1954). In view of the absence of any formal resolution by the board of adjustment setting forth the essential basic and ultimate factual findings and the insufficiency of the resolution by the board of commissioners, we believe that the cause should now be remanded for findings and recommendation to the board of commissioners in the light of the record and the principles expressed in this opinion. See Ward v. Scott, supra, 11 N.J. at pages 128-129; 16 N.J. at pages 18-20.
The judgment of the Appellate Division is modified and the cause is remanded for further proceedings before the board of adjustment of Belmar.
BURLING, J. (concurring).
I agree with the majority opinion that the state of the record is such that a remand to the board of adjustment for further basic and then ultimate factual findings in accordance with the standards set forth in N.J.S.A. 40:55-39 is essential to a proper disposition of the cause on appeal. Tomko v. Vissers, 21 N.J. 226 (1956). Until such time as that is accomplished I would refrain from comment on the merits of this particular case.
My disagreement is with the enunciation of the legal principles governing requests for variances seeking to enlarge nonconforming uses existing at the time of the enactment of the zoning ordinance. The majority, after reaffirming the principles of the two Ward v. Scott cases, 11 N.J. 117 (1952), 16 N.J. 16 (1954), then observe:
"Since a variance may, upon a proper showing of special reasons within N.J.S.A. 40:55-39(d), be granted to create a new non-conforming use in a residential zone it may clearly be granted to enlarge a pre-existing nonconforming use; it is entirely evident that a limited extension of a pre-existing professional office, gasoline station, funeral home, shopping center or other business activity in *273 a residential zone, will ordinarily be less likely to involve substantial impairment of the zoning plan than will the creation of a wholly new use of such nature."
But to make the prime focus of attention the "limited extension" of the pre-existent nonconforming use in order to determine whether a variance is permissible is in my view not the proper approach. Such a thesis fails to take into account the fundamental distinction between the extension or enlargement of a pre-existing nonconforming use and the creation of a new nonconforming use. A pre-existing nonconforming use exists as a matter of legislative right, R.S. 40:55-48, irrespective of the manner in which the use will mesh with the existing or projected zoning plan or the essentials of sound zoning as outlined in the statute, R.S. 40:55-32, and irrespective of whether there exists a "hardship" or "special reasons" justifying the use under N.J.S.A. 40:55-39. A variance to create a nonconforming use, on the other hand, rests in the sound and reasoned discretion of the board of adjustment and governing body, exercised in accordance with the standards and procedure set forth in N.J.S.A. 40:55-39, 40:55-32.
While it is true that a request for a variance is the proper procedure to achieve a substantial extension of a nonconforming use, Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64 (1952), application for such variance should be viewed with disfavor, and should only be granted where the property owner can clearly convince the appropriate municipal officials that a variance to create the nonconforming use in the first instance would have been granted.
The principles applicable to the situation at hand were enunciated by this court in Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189, at page 196 as follows:
"While the courts have given full accord to this statutory mandate, United Advertising Corp. v. Borough of Raritan, 11 N.J. 144, 152 (1952), Frank J. Durkin Lumber Co. v. Fitzsimmons, supra [106 N.J.L. 183 (E. & A. 1929)]; Kramer v. Town of Montclair, 33 N.J. Super. 16 (App. Div. 1952); the spirit of the law is to restrict non-conforming uses. Monmouth Lumber Co. v. Ocean *274 Township, 9 N.J. 64, 77 (1952); Speakman v. Mayor and Council of Borough of North Plainfield, 8 N.J. 250, 257 (1951); Lumund v. Board of Adjustment, 4 N.J. 577, 585 (1950). Their position in the zoning scheme is not encouraged because of the tendency to subvert rather than support sound planning. Such uses possess a contagious character which works to infect the neighborhood of their location, Beirn v. Morris, 14 N.J. 529, 536 (1954); Note, 9 U. of Chicago L. Rev. 477, 479, 480 (1942), and their presence is adverse to the zoning objective of reasonable conformity, Speakman v. Mayor and Council of Borough of North Plainfield, supra, 8 N.J. at page 257. One eminent authority has gone so far as to suggest that the entire problem of the non-conforming use might be solved by establishing a duty to abstain from unfair non-conformity. See Freund, `Some Inadequately Discussed Problems of the Law of Zoning and City Planning,' 24 Ill. L. Rev. 135, 147 (1929). Without discussing the merits of this proposition it is sufficient to remember that the benefits which accrue to the public through the zoning method are accompanied by burdens to all. Schmidt v. Board of Adjustment, 9 N.J. 405, 415 (1952)."
To the same effect is Monmouth Lumber Co. v. Ocean Township, supra.
These cases are in harmony with the firmly established policy in this State that pre-existing nonconforming uses must be contained, consonant with the spirit of a unified zoning plan. Burmore Co. v. Smith, 124 N.J.L. 541 (E. & A. 1940); Gross v. Allan, 37 N.J. Super. 262 (App. Div. 1955); Hay v. Board of Adjustment of Borough of Fort Lee, 37 N.J. Super. 461 (App. Div. 1955); Martin v. Cestone, 33 N.J. Super. 267 (App. Div. 1954); Rockleigh Borough, Bergen County v. Astral Industries, Inc., 29 N.J. Super. 154 (App. Div. 1953); Home Fuel Oil Co. of Ridgewood v. Board of Adjustment of Borough of Glen Rock, 5 N.J. Super. 63 (App. Div. 1949); National Lumber Products Co. v. Ponzio, 133 N.J.L. 95 (Sup. Ct. 1945); and see Editorial Note, 9 Rutgers L. Rev. 697, 706 (1955); Note, 102 U. of Pa. L. Rev. 91, 98 (1953).
A de minimis change would not be detrimental to the philosophy of containment. See Martin v. Cestone, supra (33 N.J. Super. at pages 270-271). But before a variance to substantially extend or enlarge a pre-existing nonconforming use may be granted under N.J.S.A. 40:55-39 *275 the appropriate municipal officials should first determine whether a variance to create the use in the first instance would have been granted. In the instant case, being under N.J.S.A. 40:55-39(d), unless the board of adjustment and the governing body of Belmar could fairly say that they would have granted a request for a variance to create a funeral home in the residential zone, then a substantial enlargement of the use may not be permitted.
To hold otherwise would render nugatory the policy to contain pre-existing nonconforming uses and the hope that eventually they will be relocated in more suitable environs. A substantial extension or enlargement of that use may perpetuate its continued existence, rather than "wither" it and incidentally operates unfairly against those who are not permitted to locate in the zone in the first instance.
Accordingly I vote to modify and remand.
BURLING, J., concurring in result.
For modification and remandment  Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS and PROCTOR  5.
For affirmance  Justice HEHER  1.