718 A.2d 1218 (1998)
315 N.J. Super. 427
The STOP & SHOP SUPERMARKET COMPANY, a Corporation of the State of Delaware, and State Street Bank and Trust Company of Connecticut, not in its individual capacity, but solely as Trustee under a Trust Agreement dated April 26, 1994, Plaintiffs-Respondents,
v.
The BOARD OF ADJUSTMENT OF THE TOWNSHIP OF SPRINGFIELD, Defendant-Appellant, and
The Colonial Association of Springfield and the Township of Millburn, Defendants-Respondents/Cross-Appellants.
Village Super Market, Inc. and Sumas Realty Corporation, Intervenors/Cross-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 1998.
Decided October 23, 1998.
*1219 Neil J. Dworkin for defendant-appellant Board of Adjustment of Township of Springfield.
James V. Segreto, Haledon, for plaintiffs-respondent Stop & Shop Supermarket Company (Segreto & Segreto, attorneys; James V. Segreto, of counsel and on the brief).
Roger S. Clapp for defendant-respondent/cross-appellant Township of Millburn (Cooper, Rose & English, attorneys; Mr. Clapp and Bruce S. Goodman, on the brief).
Michael S. Feldman, Somerville, for defendant-respondent/cross-appellant Colonial Association of Springfield (Wasser & Feldman, attorneys; Mr. Feldman, on the brief).
Stephen E. Barcan, Woodbridge, for intervenors/cross-appellants Village Supermarket, Inc. and Sumas Realty Corp. (Wilentz, Goldman & Spitzer, attorneys; Mr. Barcan, of counsel and on the brief; Donna M. Jennings, on the brief).
Before Judges BAIME, A.A. RODRIGUEZ and KIMMELMAN.
The opinion of the court was delivered by BAIME, P.J.A.D.
This appeal presents novel questions concerning the nature of rights that inhere in the grant of a use variance. The subject property is "split-zoned," the front portion located in a commercial zone and the rear portion located in a residential zone. In 1956, the Springfield Board of Adjustment (Board) granted a variance permitting Sak's Fifth Avenue to use the rear portion of the property for a parking lot accessory to its planned retail store. Several years later, the Board granted another variance allowing Sak's to extend the structure of its store into the residential zone. Stop & Shop Supermarket Company subsequently purchased the property and filed an application with the Board to operate a supermarket, relying on the variances granted previously to Sak's. Following a series of hearings, the Board denied Stop & Shop's application, finding that the proposed use of the property was not substantially similar or essentially duplicative of the use for which the variances were originally granted. The Board thus concluded that Stop & Shop was obliged to file a new application for a use variance. The Law Division overruled the Board, holding that the effect of the prior variances was to allow Stop & Shop to use the property for any purpose permitted in a commercial zone by the Township's zoning ordinance. We reverse. We hold that a use created by a variance may not be expanded or substantially changed without further application to the board of adjustment.

I.
The facts are not in dispute and are essentially a matter of public record. The property is located on Millburn Avenue straddling the Millburn-Springfield border. The bulk of the property is situated in Springfield. Under the Springfield ordinance, the front of the property is zoned commercial and the uses permitted include "[t]he sale of goods for ... consumption off the premises ... intended to meet direct consumer food, clothing, furnishing, recreational or other needs...." The rear of the property is zoned single family residential.
*1220 In 1956 Sak's applied for a variance to permit the rear portion of the property to be used for off-street parking. In granting the variance, the Springfield Board found that the rear portion of the property did not "practically lend [itself to] the construction of houses." The Board concluded that "integrated development" of the land required use of the rear portion for a parking lot which would ease "traffic flow into the abutting residential areas" and alleviate traffic congestion.
In 1968, Sak's applied for a use variance to extend the rear portion of its department store building into the residential zone. The Springfield Board again granted Sak's application, finding that the department store "provide[d] shopping of a quality not otherwise available in the community." The Board further determined that extension of the building into the residential zone would not impair the value or use of the surrounding areas. Years later, Saks abandoned its department store operation at that location.
Stop & Shop purchased the property in 1996. Intending to operate a supermarket, Stop & Shop applied to the Springfield zoning officer for an interpretation whether its proposed use of the property would comport with the variances granted previously to Sak's. Stop & Shop's application and supporting documents were forwarded to the Board's attorney who concluded that the proposed use of the property as a supermarket differed substantially from Sak's prior operation of a retail store. The attorney suggested that Stop & Shop apply to the Board for a use variance.
Stop & Shop appealed the attorney's decision to the Board. Extensive hearings were conducted. We need not describe in detail all of the evidence presented. Suffice it to say, Stop & Shop contended that the variances previously granted to Sak's essentially converted the rear portion of the property from residentially zoned land to commercially zoned land. Although the argument advanced by Stop & Shop was ambiguously phrased, the gist of its contention was that it could develop the property for any purpose consistent with a permitted commercial use under the Springfield zoning ordinance. To paraphrase, Stop & Shop argued that the effect of the variances was to rezone the rear portion of the property from residential to commercial, and that changes in the intensity of use of the land and traffic were to be considered during the site plan review of the development.
Several individuals and businesses objected to Stop & Shop's application. They asserted that the use of the property proposed by Stop & Shop was "qualitatively" different than that authorized under the variances granted to Sak's. More specifically, they claimed that operation of a supermarket would substantially increase the intensity of traffic and would significantly impact upon the surrounding residential area.
The Board determined that the prior variances granted to Saks did not authorize Stop & Shop to operate a supermarket or a parking lot accessory to such use in the residential zone. In its resolution, the Board stressed that its grant of the 1956 and 1968 variances reflected "only the quality, design and intensity of use proposed by Sak's." In contrast, the Board found that operation of a supermarket presented marked differences in traffic patterns, truck deliveries and hours of operations. The Board thus concluded that the supermarket activities proposed by Stop & Shop were not of a "similar nature, kind or use intensity" and were not permitted under the variances previously granted to Sak's.
Stop & Shop brought an action in lieu of prerogative writs. The Law Division reversed the Board's decision. In its written decision, the court stressed that operation of a supermarket constituted a permitted commercial use under Springfield's zoning ordinance. The court reasoned that the prior variances permitting Sak's to use the rear portion of the property as a parking lot and to extend the structure of the store into a residential zone was "not personal to the owner to whom it [was] granted but [was] available to the grantees' successors." In reaching this conclusion, the court emphasized that Stop & Shop was not required to show that its operations were "similar in intensity of use" with those of its predecessor in title.

*1221 II.
The parties have devoted much attention to the question whether a variance granted pursuant to N.J.S.A. 40:55D-70(d) creates a "conforming" or "nonconforming" use. The issue has also been the subject of scholarly comment. See Cox, New Jersey Zoning and Land Use Admin., § 13-1 at 275-76 (1998). Reported opinions have added fuel to the controversy. Several decisions have referred to such uses as "nonconforming." See, e.g., Grundlehner v. Dangler, 29 N.J. 256, 269, 148 A.2d 806 (1959); Pieretti v. Mayor of Bloomfield, 35 N.J. 382, 387, 173 A.2d 296 (1961). Others have characterized such uses as "conforming." See, e.g., Industrial Lessors, Inc. v. City of Garfield, 119 N.J.Super. 181, 183, 290 A.2d 737 (App.Div.), certif. denied, 61 N.J. 160, 293 A.2d 390 (1972); Ramsey Assocs., Inc. v. Board of Adj. of Bernardsville, 119 N.J.Super. 131, 133, 290 A.2d 448 (App.Div.1972). However phrased, we are satisfied that a use created by a variance may not be significantly altered or intensified without further application to the board of adjustment.
A use variance "is an official quasi-legislative, quasi-judicial determination that the use or structure allowed is not offensive to the [zoning] ordinance in the broad context of the particular circumstances...." Industrial Lessors, Inc. v. City of Garfield, 119 N.J.Super. at 183, 290 A.2d 737. A zoning board's power to grant a variance "is intended to accommodate individual situations which, for a statutorily-stated reason, require relief from restrictions otherwise uniformly applicable to the zone as a whole." Elco v. R.C. Maxwell Co., 292 N.J.Super. 118, 126, 678 A.2d 323 (App.Div.1996) (citing Township of Dover v. Board of Adj. of Dover, 158 N.J.Super. 401, 412, 386 A.2d 421 (App. Div.1978)). A variance presupposes that a municipality's zoning regulations are reasonable, see Moriarty v. Pozner, 21 N.J. 199, 210, 121 A.2d 527 (1956), but it recognizes that certain uses of property are compatible with the design of that particular zone even though its proposed use is contrary to the restrictions imposed. Elco v. R.C. Maxwell Co., 292 N.J.Super. at 125, 678 A.2d 323.
Use variances are appropriate only in exceptional cases. There is a "strong legislative policy favoring land use planning by ordinance rather than by variance." Id. at 126, 678 A.2d 323; see also Feiler v. Fort Lee Bd. of Adj., 240 N.J.Super. 250, 255, 573 A.2d 175 (App.Div.1990), certif. denied, 127 N.J. 325, 604 A.2d 600 (1991); Chesterbrooke Ltd. Partnership v. Planning Bd. of Chester, 237 N.J.Super. 118, 128, 567 A.2d 221 (App. Div.), certif. denied, 118 N.J. 234, 570 A.2d 984 (1989). This policy is reflected in the statutory language which authorizes the grant of a use variance only "[i]n particular cases and for special reasons." N.J.S.A. 40:55D-70(d); cf. Sica v. Board of Adj. of Wall, 127 N.J. 152, 156, 603 A.2d 30 (1992). While use variances are not personal to the owner, but run with the land, see Aldrich v. Schwartz, 258 N.J.Super. 300, 308-09, 609 A.2d 507 (App.Div.1992); DeFelice v. Zoning Bd. of Adj. of Point Pleasant Beach, 216 N.J.Super. 377, 381, 523 A.2d 1086 (App.Div. 1987), they are dependent upon the facts of each particular case. Bove v. Board of Adj. of Emerson, 100 N.J.Super. 95, 101, 241 A.2d 252 (App.Div.1968); cf. O'Donnell v. Koch, 197 N.J.Super. 134, 142, 484 A.2d 334 (App. Div.1984). The grant of a use variance is thus predicated upon the thesis that "development of [the] site in the community ... is particularly appropriate for that very enterprise." Medici v. BPR Co., 107 N.J. 1, 18, 526 A.2d 109 (1987); see also Kaufmann v. Planning Bd. of Warren, 110 N.J. 551, 563, 542 A.2d 457 (1988); cf. Kohl v. Mayor of Fair Lawn, 50 N.J. 268, 279-80, 234 A.2d 385 (1967).
We, therefore, disagree with the premise that the effect of the variances granted to Sak's was to rezone the property from residential to commercial. In granting these variances, the Board considered only the specific enterprise proposed by Sak's in its application. Contrary to Stop & Shop's contention, the prior variances did not create an open sesame to Sak's and its successors in interest to use the property for any purpose permitted in a commercial zone by the Springfield ordinance. Alpine Tower Co. v. Mayor of Alpine, 231 N.J.Super. 239, 247, 555 A.2d 657 (App.Div. 1989). Instead, any proposed, significant change or alteration in the use of the property required further consideration by the board of adjustment.
*1222 As we noted earlier, the question presented in this appeal is one of first impression. However, many of the policies that underlie restrictions in the enlargement of nonconforming uses lend themselves to the present case. A nonconforming use is one which, due to the enactment of subsequent zoning regulations, has become unlawful but is permitted to exist notwithstanding the change in the zoning law. N.J.S.A. 40:55D-68; see Town of Belleville v. Parrillo's, Inc., 83 N.J. 309, 315, 416 A.2d 388 (1980). It is axiomatic that "an existing nonconforming use will be permitted to continue only if it is a continuance of substantially the same kind of use as that to which the premises were devoted at the time of passage of the zoning ordinance." Id. at 316, 416 A.2d 388; see also N.J.S.A. 40:55D-68; Palatine I v. Planning Bd. of Montville, 133 N.J. 546, 565, 628 A.2d 321 (1993). If an owner of a nonconforming property expands upon, enlarges or substantially changes its use, he must seek a new use variance from the local zoning board. N.J.S.A. 40:55D-70(d)(2); see Burbridge v. Township of Mine Hill, 117 N.J. 376, 385, 568 A.2d 527 (1990); Avalon Home & Land Owners Ass'n v. Borough of Avalon, 111 N.J. 205, 210-11, 543 A.2d 950 (1988). Expansion of nonconforming uses is not favored. Urban v. Planning Bd. of Manasquan, 124 N.J. 651, 656, 592 A.2d 240 (1991); Irvin v. Township of Neptune, 305 N.J.Super. 652, 659, 702 A.2d 1388 (App.Div. 1997); Township of Fairfield v. Likanchuk's, Inc., 274 N.J.Super. 320, 328, 644 A.2d 120 (App.Div.1994). Nonconforming uses may not be enlarged as of right except where the change is so negligible or insubstantial as not to warrant judicial or administrative interference. Belleville v. Parrillo's Inc., 83 N.J. at 316, 416 A.2d 388; Grundlehner v. Dangler, 29 N.J. at 263, 148 A.2d 806; Lehen v. Atlantic Highlands Zoning Bd. of Adj., 252 N.J.Super. 392, 399, 599 A.2d 1283 (App.Div. 1991). The power to allow expansion of a nonconforming use when the change is not negligible or "substantial" is reposed exclusively with the board of adjustment pursuant to the "special reasons" provisions under N.J.S.A. 40:55D-70(d)(2). Irvin v. Township of Neptune, 305 N.J.Super. at 659, 702 A.2d 1388; Township of Fairfield v. Likanchuk's Inc., 274 N.J.Super. at 328, 644 A.2d 120.
Unlike nonconforming uses, a use variance based on "special reasons" is designed to advance the general purposes of the zoning laws. Burbridge v. Township of Mine Hill, 117 N.J. at 386-87, 568 A.2d 527; see also Degnan v. Monetti, 210 N.J.Super. 174, 182, 509 A.2d 277 (App.Div.1986); Kessler v. Bowker, 174 N.J.Super. 478, 485, 417 A.2d 34 (App.Div.1979), certif. denied, 85 N.J. 99, 425 A.2d 264 (1980). We are nevertheless satisfied that any proposed change in the use for which a variance is granted that is not negligible or insubstantial should require further consideration by the board of adjustment. The Board should determine whether the new use proposed satisfies the applicable positive and negative criteria.

III.
The Board found that the use of the property proposed by Stop & Shop constituted a substantial intensification of the use permitted under the prior variances. Stop & Shop attacks that finding on appeal. We stress that Stop & Shop presented no evidence indicating that its use of the property would be qualitatively similar to Sak's previous use. The Board could reasonably have found from the evidence presented that the change of use proposed by Stop & Shop was substantial and warranted further review by way of an application for a variance. See Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 92-93, 312 A.2d 497 (1973); see also Matter of Valley Rd. Sewerage Co., 154 N.J. 224, 237-38, 712 A.2d 653 (1998).
We thus reverse the Law Division's judgment.