AVALON HOME AND LAND OWNERS ASSOCIATION, JOHN CAIRNS AND MARGARET CAIRNS, HIS WIFE, EDWARD P. CRIPPEN, FRANCES J. MORRIS AND MARY K. MORRIS, PLAINTIFFS-RESPONDENTS, v. BOROUGH OF AVALON, MICHAEL MACRINA, HARRY CLAYTON, AND P & D PARTNERSHIP, DEFENDANTS, AND PHILTONE, INC., DEFENDANT-APPELLANT.

Argued January 19, 1988—Decided July 25, 1988.

*Stephen Hankin* argued the cause for appellant (*Hankin, Sandson & Sandman*, attorneys).

*Kenneth A. DiMuzio* argued the cause for respondent (*Hoffman, DiMuzio, Hoffman & Marcus*, attorneys).

PER CURIAM.

The narrow issue in this case concerns the validity of a municipal ordinance that authorizes the restoration or replacement of any structures within the municipality that accommodate nonconforming uses, provided that the size of the replacement structure, measured by its "cubicle content," does not exceed the size of the existing structure. The Law Division invalidated the ordinance. In an unreported opinion, the Appellate Division affirmed substantially for the reasons stated by the trial court. We granted certification, 108 *N.J.* 218 (1987), and now affirm.

I

Defendant Philtone, Inc. (Philtone) is the owner of the Hotel Avalon, a fifty-room hotel located in the Borough of Avalon (Borough). When Philtone acquired the hotel in 1966, the hotel was a permitted use under the local zoning ordinance. The area was later rezoned for one-family residential dwellings and the hotel became a nonconforming use.

In 1980 the Borough adopted an ordinance to permit restoration and replacement of nonconforming uses under prescribed conditions. (Borough of Avalon, N.J., Ordinance No. 78–80 (July 25, 1980) (codified as amended at Borough of Avalon, N.J., Rev.Ord. § 27–7.5 (Supp.1981)).[1] According to its preamble, the

---

[1] As amended, the ordinance provides in relevant part:

ordinance had as its purpose the encouragement of renovation of structures that accommodate nonconforming uses. The preamble noted that in the past only the interiors of such buildings had been renovated, resulting in unsafe and aesthetically unappealing structures.

The ordinance thus permits reconstruction of nonconforming uses provided the new structure has no greater "cubicle content" [2] than the existing structure. Avalon, N.J., rev. ord. § 27-7.5a(1). It permits the new structure to have a different configuration or design from that of the existing structure, and allows an increase in the land coverage of the existing structure over that permitted by the applicable zoning provisions. *Id.,*

---

A. *Enlargement.*

(1) *Use.* On or after the effective date of this Ordinance, a building or use which is not in conformity with the requirements of the district wherein it is located may be continued in its present location, provided no subsequent alterations or addition is made which would extend or enlarge the cubicle content of the building or use.

It shall be the duty of the Borough Zoning Officer to maintain accurate records of all non-conforming use properties in the Borough.

(2) *Bulk.* A nonconforming building may be altered, or an addition made, so long as the nonconformity or nonconforming portion of the structure is not extended or enlarged.

(3) Any non-conforming use existing on the effective date of this subsection may be altered, repaired, restored, or replaced by a structure of the same cubicle content and use, provided that

(a) Said structure utilized ten percent (10%) or more of the pre-existing foundation, or ten percent (10%) or more of the exterior walls;

(b) Where possible, said structure shall conform to the applicable zone district regulations in which such use is permitted, subject to the provisions in subsection [a(3)(c)] below;

(c) Setbacks shall conform to minimum requirements of the zone in which located, or shall be as were pre-existing;

(d) Lot area coverage requirements shall not be exceeded, but the pre-existing ground floor area *may be* expanded to said requirements.

(e) The height of the structure shall not exceed thirty (30) feet above floor level or may be as was pre-existing. [Avalon, N.J., Rev.Ord. § 27-7.5 (Supp.1981) (emphasis added).]

2The ordinance apparently uses the undefined term "cubicle content" to mean the cubic area, or volume, occupied by a structure.

§ 27–7.5a(2), (3)(d). With regard to height and setbacks, the new structure may either perpetuate the height and setbacks of the existing structure or comply with the requirements of the zoning ordinance. *Id.*, § 27–7.5a(3)(c), (e).

The ordinance also provides that at least ten percent of the pre-existing foundation or exterior walls must be used in the construction of the new structure, but the use of this material as fill fulfills this requirement. *Id.*, § 27–7.5a(3)(a).

Pursuant to the 1980 ordinance, Philtone received approval in 1985 from Avalon's planning board to demolish and reconstruct the Hotel Avalon. As it now exists, the hotel can accommodate approximately one hundred guests. It also contains a nightclub with a maximum capacity of 967 occupants. The proposed structure would accommodate approximately 196 guests in forty-six two-bedroom units and four one-bedroom units. A lounge with a capacity of fifty-six persons would replace the existing nightclub.

The planning board concluded that the proposed reconstruction did not constitute an enlargement of the existing structure, since the figures compiled by the Borough's Construction Department revealed a reduction in "cubicle content" of 4027 cubic feet. However, the Department's calculation of the size of the existing hotel included a garage measuring 32,000 cubic feet that had been torn down in 1967. Without the garage, the existing structure measured 391,735 cubic feet, while the proposed plan contemplates a structure of 419,708 cubic feet.

An architectural consultant certified that the proposed structure, like the existing structure, would be nonconforming in both height and side-yard setbacks, but would meet all other applicable bulk zoning requirements of the Borough. The new site plan would also enable the hotel to comply with the Borough's requirements for parking spaces.

Before the reconstruction commenced, plaintiff Avalon Homeowners Association challenged the validity of Avalon's ordinance. Named as defendants were P & D Partnership, a

developer that had received approval to reconstruct a different nonconforming use pursuant to the ordinance, as well as the Borough and several of its officials. Philtone, seeking to uphold the ordinance and its approval, intervened as a defendant, and P & D Partnership was subsequently dismissed on its own motion.

The Law Division granted plaintiff's motion for summary judgment, invalidating the Avalon ordinance and enjoining Avalon officials from issuing any permits pursuant to the ordinance. The trial court held that the ordinance permitted more than partial demolition and replacement of nonconforming uses contrary to *N.J.S.A.* 40:55D–68, which the court construed as permitting only partial renovations of nonconforming structures. In addition, the court found the ordinance invalid because it permitted enlargements of nonconforming uses or structures without a variance from the Borough's board of adjustment, contrary to *N.J.S.A.* 40:55D–70(d).

While the litigation was pending, Philtone applied for a variance from Avalon's board of adjustment to reconstruct the Hotel Avalon. The board of adjustment approved the variance.[3]

## II

The fundamental legal principles governing nonconforming uses are well established. They were succinctly summarized by Justice Clifford in *Belleville v. Parillo's, Inc.:*

> Historically, a nonconforming use has been looked upon as "a use of land, buildings or premises that lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of such ordinance even though it does not comply with the use restrictions applicable to the area

---

[3]The approval was subject to these conditions: (1) the proposed structure had to be modified from four floors above a garage to three floors, resulting in a height decrease of 13'6"; (2) two vacant lots owned by Philtone, which had not been included as part of the plan approved by the planning board, were to be incorporated in the proposed renovation; and (3) no live entertainment would be permitted in the fifty-three seat lounge.

in which it is situated." 6 R. Powell, *The Law of Real Property* ¶ 871 (Perm. ed. 1979). Under the Municipal Land Use Act, *N.J.S.A.* 40:55D–1 *et seq.*, such property is deemed to have acquired a vested right to continue in such form, irrespective of the restrictive zoning provisions:

> Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied and any such structure may be restored or repaired in the event of partial destruction thereof. [*N.J.S.A.* 40:55D–68.]

This statutory guarantee against compulsory termination, however, is not without limit. Because nonconforming uses are inconsistent with the objectives of uniform zoning, the courts have required that consistent with the property rights of those affected and with substantial justice, they should be reduced to conformity as quickly as is compatible with justice. In that regard the courts have permitted municipalities to impose limitations upon nonconforming uses. Such restrictions typically relate to the change of use; the enlargement or extension of the repair or replacement of nonconforming structures; and limits on the duration of nonconforming uses through abandonment or discontinuance.

The method generally used to limit nonconforming uses is to prevent any increase or change in the nonconformity. Under that restrictive view our courts have held that an existing nonconforming use will be permitted to continue only if it is a continuance of substantially the same kind of use as that to which the premises were devoted at the time of the passage of the zoning ordinance. In that regard nonconforming uses may not be enlarged as of right except where the change is so negligible or insubstantial that it does not warrant judicial or administrative interference. Where there is doubt as to whether an enlargment or change is substantial rather than insubstantial, the courts have consistently declared that it is to be resolved against the enlargement or change. [83 *N.J.* 309, 315–16 (1980) (citations omitted).]

Similarly, Justice Jacobs observed in *Grundlehner v. Dangler*:

> Shortly after the passage of the Zoning Act our courts stated that the spirit of the law was to restrict nonconforming uses and that while *R.S.* 40:45–48 permitted them to continue as of right it did not permit their enlargement as of right. Since the nonconforming uses were generally discordant to their surroundings it was the fervent hope that they would in time wither and die and be replaced by conforming uses. [29 *N.J.* 256, 263 (1959) (citations omitted).]

Nevertheless, it was emphasized in *Grundlehner* that nonconforming uses may lawfully be enlarged through the use variance procedure:

> Since a variance may, upon a proper showing of special reasons within *N.J.S.A.* 40:55–39(d), be granted to create a new nonconforming use in a residential zone it may clearly be granted to enlarge a pre-existing nonconforming use; it is entirely evident that a limited extension of a pre-existing professional office, gasoline station, funeral home, shopping center or other

business activity in a residential zone, will ordinarily be less likely to involve substantial impairment of the zoning plan than will the creation of a wholly new use of such nature. In *Monmouth Lumber Co. v. Ocean Township, supra,* 9 *N.J.* [64] at page 77 , Justice Burling expressly noted for this court that "a request for an enlargment of a nonconforming use is a request for a variance" which may be initiated under *N.J.S.A.* 40:55–39(d) or under other pertinent provisions of the statute. [*Id.* 29 *N.J.* at 269 (citations omitted).]

In its opinion invalidating the Avalon ordinance, the Law Division relied on these settled principles to support its determination that the ordinance could not be sustained. The court noted that the ordinance was inconsistent with the legislatively imposed limitation that nonconforming structures be restored or repaired only "in the event of partial destruction thereof," *N.J.S.A.* 40:55D–68, a restriction that has remained in effect in substantially the same form since its initial enactment in 1928. Relying on the Chancery Division's opinion in *D'Agostino v. Jaguar Realty Co.,* 22 *N.J.Super.* 74, 77–78 (1952), for the premise that "had it been contemplated that a structure constituting a non-conforming use could be rebuilt after complete destruction, the word "partial" would not have been used," the trial court concluded that the ordinance impermissibly authorized the reconstruction of nonconforming structures under conditions significantly broader than the limited grant of authority in the Land Use Act. We agree.

In addition, the Law Division noted that the proposed reconstruction of the Hotel Avalon would not only change its physical configuration but also increase its capacity to accommodate overnight guests, constituting an intensification, and hence a further expansion, of the nonconforming use. *Cf. Hantman v. Randolph Township,* 58 *N.J.Super.* 127 (App.Div. 1959), (change of use from summer bungalows to year-round occupancy dwellings constitutes unlawful extension of nonconforming use), certif. denied, 31 *N.J.* 550 (1960); *Heagan v. Borough of Allendale,* 42 *N.J.Super.* 472 (App.Div.1956) (addition of music and dancing to restaurant constitutes change of nonconforming use). The court concluded that such an expansion, purportedly authorized by the ordinance, was directly

contradictory to the Legislature's grant of authority to boards of adjustment to grant variances to permit expansion of nonconforming uses. *N.J.S.A.* 40:55D–70(d). We are fully in accord with this conclusion as well. It is fundamental that the municipal zoning power cannot be exercised in a manner inconsistent with the legislatively authorized grant of that power. *See Home Builders League of So. Jersey, Inc. v. Township of Berlin,* 81 *N.J.* 127, 137 (1979); *Taxpayers Ass'n of Weymouth Township v. Weymouth Township,* 80 *N.J.* 6, 20 (1976), appeal dismissed *sub nom. Feldman v. Weymouth Township,* 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.*2d 373 (1977).

We are not unsympathetic to the municipality's objectives. Apparently persuaded that a substantial number of nonconforming uses, primarily hotels, would continue in operation, the municipality considered it appropriate to encourage their renovation and restoration for safety and aesthetic considerations. Such objectives are thoroughly consistent with the purposes of the Municipal Land Use Law. *See N.J.S.A.* 40:55D–2a, i. Nevertheless, in achieving those objectives the municipality must act in a manner consistent with the statutory source of its delegated power. Thus, assuming the municipality's principal objective was to permit renovation of existing hotels, the municipality had the authority to designate hotels as permitted uses in relevant zoning districts. *N.J.S.A.* 40:55D–65; *see Medici v. BPR Co.,* 107 *N.J.* 1, 5 (1987) (acknowledging Legislature's apparent objective to encourage municipalities to make zoning decisions by ordinance rather than by variance). A less permissive alternative, also specifically authorized by the Land Use Law, *N.J.S.A.* 40:55D–67, is the conditional-use mechanism. *Cf. PRB Enterprises, Inc. v. South Brunswick,* 105 *N.J.* 1, 8 (1987) (acknowledging power of municipality to delegate to planning board, subject to prescribed standards, sites within a zone on which specific use may be permitted). Another alternative is the statutory use-variance procedure, *N.J.S.A.* 40:55D–70d, which as noted above, already has been invoked by defendant, resulting in an approval by the local board of adjustment,

although on terms and conditions different from those permitted by the invalidated ordinance. *See supra* at 209 & n. 3. Obviously, it is for the municipality, through its elected and appointed officials, to determine the most appropriate and effective means for exercising the power delegated to it by the Legislature. The limitation we impose is that the method chosen by the municipality not be inconsistent with the legislative grant of authority.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.