274 N.J. Super. 320 (1994)
644 A.2d 120
TOWNSHIP OF FAIRFIELD, PLAINTIFF-APPELLANT,
v.
LIKANCHUK'S, INC., A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 20, 1994.
Decided June 22, 1994.
*324 Before Judges KING, HAVEY and A.M. STEIN.
Basile, Testa & Testa, attorneys for appellant (Harold U. Johnson, Jr., of counsel and on the briefs).
Hasbrouck & Uliase, attorneys for respondent (Bruce C. Hasbrouck, on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
In this zoning case, plaintiff Township of Fairfield filed the present action seeking to enjoin defendant Likanchuk's, Inc., a *325 long-standing automobile salvage business, from continuing to engage in two nonconforming uses  sand and gravel mining, and concrete and asphalt recycling. The Chancery Division judge concluded that defendant may expand its mining operation throughout its entire tract because sand was a "diminishing asset." The judge also held that the principles of equitable estoppel and laches precluded the Township from enforcing its ordinances to prohibit the recycling activity. We disagree as to both points and reverse.
Defendant owns four contiguous lots identified on the Township tax map as Block 5, Lots 40, 43, 44 and 45. Under the Township's zoning ordinance, adopted in June 1969, Lots 40 and 45 are zoned planned business/light industry and Lots 43 and 44 are zoned agricultural. Automobile salvage yards, gravel mining and recycling are not permitted uses in either zone.
Since prior to the effective date of the ordinance, defendant or its principal Alex Likanchuk has owned the lots, operating an automobile salvage yard as a nonconforming use on the south-west portion of Lot 40. It is undisputed that there has also been earth and gravel removal from the site since prior to 1969, but only on Lot 40. It is also undisputed that the gravel was removed in small quantities, less than 500 cubic yards per year.
In the early 1970's a substantial housing development was constructed contiguous to defendant's property. On December 1, 1987, the Township's then zoning officer, Jared Gould, issued a Certificate of Occupancy/Use to defendant, covering all four lots, stating that the lots "[m]ay be used to accept clean fill and demolition debri [sic] for disposal."
Sometime in 1988, Township officials received neighbors' complaints of excavation of sand and gravel. Large amounts of gravel were being removed, sometimes more than 100 truckloads a day. In September 1988, the Township filed the present action seeking to stop defendant's mining operation pending review by the Zoning Board of Adjustment. Interim orders were entered denying the Township's request for temporary restraints, but requiring *326 defendant to apply to the Zoning Board for a determination as to the pre-existing use question by that body. On February 6, 1992, in response to the Township's enforcement motion, the Chancery Division judge again directed that defendant apply to the Zoning Board.
During the pendency of the action concerning the mining activity, defendant, purportedly in reliance on the December 1, 1987 Certificate of Occupancy/Use issued by Zoning Officer Gould, applied to the Department of Environmental Protection (DEP)[1] for a permit to operate an asphalt/concrete recycling center on its tract. The DEP issued the permit on February 6, 1991, subject to defendant complying with all local ordinances. Sometime in June 1991, the Township Clerk was served by Cumberland County with a notice of public hearing concerning an amendment to the County's Solid Waste Management Plan, which listed defendant as a recycling facility for concrete and asphalt. It is undisputed that Township officials visually inspected defendant's property in June 1991 when asphalt and concrete was being stockpiled on the tract, for purposes of recycling.
On July 28, 1992, the Township moved to restrain the recycling operations. The Chancery Division judge scheduled a hearing to determine whether the Township's "alleged silence and acquiescence" after the December 1, 1987 zoning certificate was issued and during defendant's DEP permit application process "shall in some way prevent [the Township] from taking action in opposition thereto at this time."
By resolution dated September 23, 1992, the Board of Adjustment, after public hearings, determined that removal of sand and gravel could be continued as a prior nonconforming use but limited to less than 500 cubic yards a year from only Lot 40.[2]
*327 On the return date of the Township's order to show cause, the Chancery Division judge first determined that sand and gravel mining was permitted on the entire property as a prior nonconforming use, because the activity involved a "diminishing asset." The judge also concluded that the December 1, 1987 certificate issued by Zoning Officer Gould was voidable, but not void in the primary sense, since it was issued within the ambit of his duties as a zoning officer. Accordingly, the judge applied equitable estoppel and laches and held that the Township could not prohibit recycling activity because defendant had reasonably relied upon Gould's certificate as well as the Township's "silence and acquiescence" during defendant's application process before the DEP and County.

I
We agree with the Township that, as a matter of law, defendant's mining activity must be limited to mining 500 cubic yards a year and confined only to Lot 40. It is settled that use of land lawfully existing prior to the enactment of a zoning ordinance may be continued even though it does not comply with the use requirements of the new enactment. See N.J.S.A. 40:55D-68; Town of Belleville v. Parrillo's, Inc., 83 N.J. 309, 315, 416 A.2d 388 (1980). However, because nonconforming uses are inconsistent with the objectives of uniform zoning, the policy of the law is to restrict, rather than to expand, such uses. Palatine I v. Planning Board of Tp. of Montville, 133 N.J. 546, 565, 628 A.2d 321 (1993); Avalon Home & Land Owners Ass'n. v. Borough of Avalon, 111 N.J. 205, 210, 543 A.2d 950 (1988). Accordingly, courts have generally required that nonconforming uses "should be reduced to conformity as quickly as is compatible with justice." Town of Belleville, 83 N.J. at 315, 416 A.2d 388. See also, Grundlehner v. Dangler, 29 N.J. 256, 263, 148 A.2d 806 (1959) (courts have *328 uniformly held that, because nonconforming uses "were generally discordant to their surroundings it was the fervent hope that they would in time wither and die and be replaced by conforming uses").
It follows that expansion of nonconforming uses is not favored. Urban v. Planning Board of Manasquan, 124 N.J. 651, 656, 592 A.2d 240 (1991). Nonconforming uses "may not be enlarged as of right except where the change is so negligible or insubstantial that it does not warrant judicial or administrative interference." Belleville, 83 N.J. at 316, 416 A.2d 388. Any doubt as to whether an enlargement or change of the use is substantial rather than insubstantial is to be resolved against the property owner. Ibid; Lehen v. Atlantic Highlands Zoning Board of Adjust., 252 N.J. Super. 392, 399, 599 A.2d 1283 (App.Div. 1991). The power to allow expansion of the nonconforming use when the change is not negligible or substantial is reposed exclusively with the board of adjustment pursuant to the "special reasons" provision under N.J.S.A. 40:55D-70d(2). See Avalon Home & Land Owners Ass'n., 111 N.J. at 211-12, 543 A.2d 950.
Despite this restrictive view expressed by our decisions, we have recognized and applied special criteria to "diminishing asset" cases, when the nature of the nonconforming use, such as excavation or soil removal, involves the utilization of a wasting asset and requires continual expansion over an area. Cronin v. Township Committee of Chesterfield, 239 N.J. Super. 611, 614, 571 A.2d 1354 (App.Div. 1990); Moore v. Bridgewater Tp., 69 N.J. Super. 1, 15, 173 A.2d 430 (App.Div. 1961); Lamb v. A.D. McKee, Inc., 10 N.J. Misc. 649, 650, 160 A. 563 (Sup.Ct. 1932); Arden H. Rathkopf and Daren A. Rathkopf, The Law of Zoning and Planning, § 51.07 at 110 (1984). In Moore, we stated the rationale for the "diminishing asset" theory as follows:
It is quite obvious that an owner intending to carry on a quarrying operation acquires more land than he thinks he will need so that he will not be a source of nuisance to his neighbors. For practical and economical reasons he must begin operations at one given point and continue from there to a point on his lands where *329 his natural resource ends or at his boundary line. For the same reasons, it is not feasible for him to quarry at different locations at the same time.

[69 N.J. Super. at 15, 173 A.2d 430.]
However, simply because the nature of the use involves a diminishing asset does not necessarily justify its expansion. Because of the expressed aversion toward expansion of nonconforming uses, the "diminishing asset" theory must be applied with caution. Public concern toward wholesale excavation and its attendant dangers are well founded. See Bernardsville Quarry, Inc. v. Borough of Bernardsville, 129 N.J. 221, 236-38, 608 A.2d 1377 (1992); Dock Watch Hollow Quarry Pit, Inc. v. Township of Warren, 142 N.J. Super. 103, 125, 361 A.2d 12 (App.Div. 1976), aff'd o.b., 74 N.J. 312, 377 A.2d 1201 (1977). Also, neighboring property may be developed for residential or other uses which are incompatible with the mining use in reliance on the perceived dormancy or limitation of the excavation activity at the time it became a nonconforming use.
Therefore, in such cases the owner must show that the entire tract was "dedicated" to the mining activity despite the fact that the activity was limited when it was rendered a nonconforming use. Moore, 69 N.J. Super. at 15-16, 173 A.2d 430. The mere unexpressed intention or hope of the owner to use the entire tract at the time the restrictive zoning ordinance is adopted, is not enough. Intent must be objectively manifested by the initial and ongoing operation of the owner before the activity was rendered nonconforming by the newly-adopted regulation. See id. at 16, 173 A.2d 430 (property owner's "outward manifestation of his intent, ... is here present, and we are not dealing with an owner's mere subjective intent"); accord, Stephan and Sons, Inc. v. Municipality of Anchorage Zoning Board of Examiners & Appeals, 685 P.2d 98, 102 (Alaska 1984) (intent to use the entire tract for quarry business must be "objectively manifested" by the property owner's operations before a nonconforming use is extended).
*330 The record here does not disclose such an "objectively manifested" intention on defendant's part to expand the mining operation to its entire tract. Defendant's soil removal activity has been confined to Lot 40 since prior to the adoption of the zoning ordinance. Also, unlike the property owner in Moore, 69 N.J. Super. at 6, 173 A.2d 430, defendant did not systematically increase and expand operations over the years. Since prior to adoption of the 1969 ordinance, defendant has engaged in sand and gravel mining sporadically, on a small and variable but not increasing scale. Moreover, when the mining was initiated and for many years thereafter, the primary use of the property was for the automobile salvage yard; mining was at best an incidental use. Significantly, after 1969, a substantial residential development was constructed contiguous to the property. The developer and subsequent buyers no doubt relied on the perceived limitation of the mining activity. Simply stated, defendant's pattern of mining has not explicitly and manifestly demonstrated an intent to expand the mining to all four lots. The Chancery Division judge did not analyze these facts for evidence of objective intent, but merely applied the "diminishing asset" theory based on the nature of the use alone. Defendant's mining use shall therefore be confined only to Lot 40, and to the removal of not more than 500 cubic yards per year.

II
We also agree with the Township that the Chancery Division judge erred by finding that the doctrines of equitable estoppel and laches preclude the Township from prohibiting the asphalt/concrete recycling activity.
Defendant is first of the view that we need not address the estoppel and laches issues. It argues that the December 1, 1987 Certificate of Occupancy/Use was not necessary because concrete/asphalt recycling is permitted as a continuation of defendant's automobile salvage yard, which it describes as a "junkyard." It points to the fact that "junk" is defined by the municipal *331 ordinance as meaning the discarding of "any material commonly known and generally referred to as junk ... stored or kept for commercial purposes in the Township," and claims that concrete/asphalt recycling is nothing more than the storage of "junk." This argument needs little discussion. Defendant ignores the fact that his automobile salvage yard is not a permitted use. As such, its enlargement or alteration to include the recycling of asphalt and concrete or any other "junk" is subject to the heightened scrutiny given to prior nonconforming uses. Clearly, a salvage yard for automobile parts is very different from a recycling center. Even if there were some doubt as to this point, that doubt must be resolved against defendant. See Town of Belleville, 83 N.J. at 316, 416 A.2d 388; Lehen, 252 N.J. Super. at 399, 599 A.2d 1283.
Alternatively, defendant argues that the concrete/asphalt recycling center is an otherwise permitted use in the planned business/light industry zone because the ordinance permits "building material supply houses" and "distribution facilities." This argument is also patently meritless. The intent of the ordinance is clearly expressed: to permit retail and wholesale building supply houses, a use fundamentally different than the operation of a recycling center. In short, there simply is no reasonable question as to the construction of the zoning ordinance; no permitted use in the two pertinent zones could be rationally defined as including asphalt/concrete recycling centers.
The estoppel argument is more problematic. The doctrine of equitable estoppel is "hesitantly applied against public entities but it will be invoked against them where interests of justice, morality and common fairness dictate." Lehen, 252 N.J. Super. at 400, 599 A.2d 1283 (citing Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 131, 207 A.2d 522 (1965)); O'Malley v. Department of Energy, 109 N.J. 309, 316-17, 537 A.2d 647 (1987). The doctrine is applied "only in very compelling circumstances." Palatine I, 133 N.J. at 560, 628 A.2d 321 (quoting Timber Properties, Inc. v. Chester Tp., 205 N.J. Super. 273, 278, 500 A.2d 757 *332 (Law Div. 1984)). Thus, in the zoning field, our Supreme Court has observed that:
Our cases have consistently held that municipal action in the land use control field taken in direct violation of law or without legal authority is void ab initio and has no legal efficacy. So a building permit issued contrary to a zoning ordinance or building code cannot ground any rights in the applicant.
[Hilton Acres v. Klein, 35 N.J. 570, 581, 174 A.2d 465 (1961).]
It follows that a property owner may not, by unilateral action, "secure a valid nonconforming use based on a violation of the zoning ordinance." Ibid. No estoppel may arise against a municipality in such a case "by reason of reliance on the part of the property owner or of acquiescence and laches by the municipality." Id. at 581-82, 174 A.2d 465.
In Jantausch v. Borough of Verona, 41 N.J. Super. 89, 93-94, 124 A.2d 14 (Law Div. 1956), aff'd, 24 N.J. 326, 131 A.2d 881 (1957), then Judge Weintraub discussed the estoppel issue in the context of the issuance of a building permit. Where a permit is regularly issued in accordance with an ordinance, absent fraud, a municipality will be estopped from revoking it after reliance. 41 N.J. Super. at 93, 124 A.2d 14. In the "intermediate" situation, when an administrative official in good faith and within the ambit of his duty makes an erroneous and debatable interpretation of an ordinance and a property owner relies on it in good faith, that is, there is a mistaken or irregular exercise of an ministerial function, estoppel may be appropriate. Id. at 94-95, 124 A.2d 14. However, "where there is no semblance of compliance with or authorization in the ordinance, the deficiency is deemed jurisdictional and reliance will not bar even a collateral attack after the expiration of time limitation applicable to direct review." Id. at 94, 124 A.2d 14.
The Jantausch principles were applied in Hill v. Board of Adjust. Borough of Eatontown, 122 N.J. Super. 156, 160-62, 299 A.2d 737 (App.Div. 1972), where a building inspector issued a building permit that clearly did not conform to the side-yard requirements of the zoning ordinance. In the context of a review of the grant of a hardship variance, a majority of the court held *333 that issuance of the permit was a "good faith," irregular exercise of duty rather than an act outside of the building inspector's capacity. Ibid. Thus the permit was not within the void class under Jantausch. Ibid. Noting that the municipality sought to enforce destruction of substantial improvements, the court relied on the equitable doctrines of estoppel, laches and relative hardship to bar the challenge to the resulting addition. Id. at 163-65, 299 A.2d 737. Judge Fritz, concurring, cautioned that reliance on action so clearly contrary to the zoning ordinance, whose impropriety was completely undebatable, should not generate an estoppel against the municipality. Id. at 165-66, 299 A.2d 737 (Fritz, J., concurring). However, he agreed that the addition should be allowed to remain, essentially because it would qualify for a hardship variance. Id. at 169-170, 299 A.2d 737.
Judge Fritz revisited the issue in Jesse A. Howland & Sons, Inc. v. Borough of Freehold, 143 N.J. Super. 484, 489, 363 A.2d 913 (App.Div.), certif. denied, 72 N.J. 466, 371 A.2d 70 (1976), where he had occasion to refine the majority holding in Hill. He stated that the finding of "good faith" on the part of a zoning official can only be satisfied by a showing that "an issue of construction of the zoning ordinance ... was, when the permit was issued, sufficiently substantial to render doubtful a charge that the administrative official acted without any reasonable basis or that the owner proceeded without good faith." Ibid.
Most pertinent to the present facts is Township of Mahwah v. Landscaping Technologies, Inc., 230 N.J. Super. 106, 111, 552 A.2d 1021 (App.Div. 1989), where we held that the Township was not equitably estopped from enforcing its ordinance to prevent the property owner from conducting a tree nursery business on a rear lot which was not zoned for such a use. The owner's estoppel argument was predicated on the issuance of a certificate of continued occupancy and a covering letter from the zoning officer which stated that the use was a valid nonconforming use as to both the rear and front lot. Id. at 109-10, 552 A.2d 1021. Noting that under N.J.S.A. 40:55D-68 the zoning board of adjustment had *334 exclusive jurisdiction to make a determination as to the scope of a nonconforming use, we stated that the zoning officer did not act within the "ambit of his duty" in certifying that the nonconforming use extended to the rear lot. Id. at 110, 552 A.2d 1021. Endorsing Judge Fritz's analysis in Howland, we reasoned that the certificate was not issued in "good faith" because there was no issue of construction of the zoning ordinance which rendered doubtful a charge that the official acted without any reasonable basis. Id. at 111, 552 A.2d 1021.
The facts before us are akin to those in Township of Mahwah. Defendant's property enjoyed a nonconforming use status as an automobile salvage yard. The December 1, 1987 certificate issued by Zoning Officer Gould allowed defendant "to accept clean fill and demolition debri [sic] for disposal." To the extent that the Zoning Officer intended to allow collection and demolition of material other than automobile parts, he clearly usurped the Zoning Board's exclusive power to grant an expansion of a legal nonconforming use. N.J.S.A. 40:55D-70d(2). To the extent that he may have intended to convert the existing nonconforming use to an asphalt/concrete recycling center, a nonpermitted use, his actions were "without even a semblance of compliance with the relevant ordinances" and statutes. Palatine I, 133 N.J. at 559, 628 A.2d 321. Thus, estoppel does not apply even if defendant had relied on the zoning certificate. Id. at 560, 628 A.2d 321.
Defendant also seeks to apply estoppel and laches based on its reliance on the Township's "acquiescence" during his application to the DEP for the recycling permit. Defendant points to the following undisputed facts: (1) the Township recorded no objection when, in June 1991, it received notice of the County's public hearing to consider an amendment to its Solid Waste Management Plan, incorporating defendant's recycling center; (2) in June 1991, Township officials observed, without comment, "debris" stockpiled on defendant's land; (3) in its January 22, 1992 pleadings in the mining dispute defendant stated that it "legitimately run[s] an *335 auto parts and recycling operation as a concrete and asphalt recycling business"; and (4) during the February 1992 Zoning Board hearing concerning defendant's mining activity, defendant disclosed the fact that it had obtained a recycling permit from the DEP and that the amendment to the County Plan had been approved.
A municipality's "[p]rior tolerance of a use in violation of a zoning ordinance ... will not estop the municipality from later enforcing the ordinance." Universal Holding Company v. Township of North Bergen, 55 N.J. Super. 103, 112, 150 A.2d 44 (App. Div. 1959). Thus, a municipality's enforcement of its ordinance ordinarily "may not be prevented on grounds of estoppel merely because a suit to terminate the illegal use could have been commenced earlier." Ianieri v. East Brunswick Zoning Board of Adjust., 192 N.J. Super. 15, 24-25, 468 A.2d 1072 (Law Div. 1983). Further, the application of laches as a defense to a municipality's attempt to enforce its ordinance does not "comport with salutary public policy," and the doctrine should not be permitted to frustrate the enforcement of a valid zoning regulation "except in the clearest and most compelling circumstances." Universal Holding Company, 55 N.J. Super. at 111, 150 A.2d 44. This is because the municipality represents "all the people of the municipality and the zoning ordinance is presumably for the benefit of the community as a whole." Ibid.
The Township's purported "silence and acquiescence" during defendant's application for a recycling permit simply does not make a case for estoppel or laches. While it may be true that the municipal clerk received notice of the June 1991 County hearing, that notice at most explained the County's intention to "update the [Solid Waste Management Plan] by ... including recycling centers located in the County"; it did not, and could not, state that defendant was then crushing asphalt and concrete as part of an on-going recycling activity. Also, the observation by Township officials of stockpiled debris on defendant's premises did not necessarily constitute notice that defendant was then licensed to *336 operate a full-fledged asphalt/concrete recycling business. When the Township's attorney learned during the February 1992 Zoning Board hearing that defendant had approvals to operate the recycling center, he promptly sought authority from the governing body to enjoin the activity. The attorney obtained such authority in June and filed for injunctive relief in July 1992. Thus, this is clearly not a case where the governing body unreasonably slept on its rights.
Moreover, any reliance on defendant's part in the Township's "silence and acquiescence" from June 1, 1991 to July 1992 was not substantial. During this period defendant did nothing more than process its application before the DEP and County, stockpile recyclable debris and seek a market for its intended activity. It purchased no equipment, did not commence recycling the stockpiled material and, unlike the property owner in Hill, did not commence construction or alteration of a building. This "reliance" must be deemed minimal when weighed against the supremacy of the public interest in demanding that zoning and planning standards be applied uniformly, and that nonconforming uses be narrowly confined. For example, there is evidence, and the Chancery Division judge so found, that a rented "crusher" will be employed during the recycling process and that such a machine may disturb the tranquility of the neighboring residents. Further the DEP recycling permit itself indicates concerns regarding the stockpiling, processing and recycling of debris, traffic and the possibility of contaminants in the recycling materials. The circumstances compelled the Township to act. The doctrines of equitable estoppel and laches should not prevent such action.
Reversed and remanded for the entry of an appropriate order.
NOTES
[1] Now the New Jersey Department of Environmental Protection and Energy.
[2] The Board's September 23, 1992 resolution was never appealed, apparently because the parties had agreed that any appeal must await a resolution of defendant's application for a use variance for the other lots, then pending before the Board. Therefore, both parties agree that the Board's resolution is not dispositive of the mining, nonconforming use issue.