702 A.2d 1388

BEVIN IRVIN, PLAINTIFF–RESPONDENT, v. TOWNSHIP OF NEP-
TUNE, GENE R. MARKS, CONSTRUCTION OFFICIAL, PATSY
K. TOWNSEND, DIRECTOR OF CODE & CONSTRUCTION,
AND DAVID SPATZ, PLANNING CONSULTANT, DEFEN-
DANTS–RESPONDENTS, v. THE OCEAN GROVE HOME-
OWNERS ASSOCIATION, INTERVENOR/DEFENDANT–AP-
PELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 3, 1997—Decided December 9, 1997.

Before Judges HAVEY, LANDAU and NEWMAN.

*John J. Hopkins*, attorney for appellant.

Respondent Bevin Irvin did not file a brief.

*Ronan, Tuzzio, Giannone & McGuire*, attorneys for respondents Township of Neptune, Gene R. Marks, Patsy K. Townsend, and David Spatz (*John S. Wisniewski*, on the statement in lieu of brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This is an appeal by intervenor Ocean Grove Homeowners Association (OGHA)[1] from a final order by the Law Division, dated February 11, 1997, which directed that a stop work order issued by the Township of Neptune (Township) for construction at 62A Main Avenue, Ocean Grove[2], be permanently vacated and

---

[1] The Township filed a statement in lieu of brief.

[2] Ocean Grove is part of the Township of Neptune.

that as plaintiff Bevin Irvin had been granted all necessary approvals, he could proceed with construction at that location. We reverse.

On April 24, 1995 Irvin entered into a contract to purchase the property containing an abandoned hotel with thirty-three rooms and two apartments which had stood vacant for more than ten years. The hotel property is located in a HD–C district (historic-commercial). In December 1994, it was determined to be a legal non-conforming use in that zone by Patsy K. Townsend (Townsend), Director of Code and Construction/Zoning Official for the Township. Hotels are conditional uses in the HD–C district, while apartments may be accessory uses provided they are in a mixed use commercial/residential building.

Irvin took title on May 25, 1995.

A demolition permit was issued by the Township in July 1995. In August, a Certificate of Appropriateness for exterior repairs was issued by the Township Board of Architectural Review, followed by a building permit for the repair work approved by that Board.

In August 1995, initial construction drawings were submitted to municipal officials by plaintiff's architect showing plans for stores and apartments. These were subsequently modified by Irvin to exclude the stores, primarily in response to the concerns of municipal officials respecting handicap access, and Irvin's unwillingness to incur the costs to provide such access. A structural engineering report was also submitted. On January 6, 1996, plaintiff sent a letter to the Township of Neptune's zoning officer requesting permission to construct ten apartments in the existing building, but no stores.

After an exchange of communications between Townsend, the Code official, and Dave Spatz (Spatz), the Township's planner, it was determined that although the property was in an HD–C zone in which apartments were only a permitted accessory use to

commercial stores, plaintiff's intended construction qualified as a continuation of a legal, pre-existing non-conforming (hotel) use.

On February 2, 1996, plaintiff submitted his new construction drawings for conversion of the hotel into a ten-apartment structure. Townsend determined that this was a pre-existing use and the plan to "downsiz[e] the units to a total of 10 apartments ... would be an approved use ... not requir[ing] a variance."

Thereafter, on April 23, 1996, a construction permit was issued by Gene Marks, the Township Construction Official. In October and November 1996, an additional Certificate of Appropriateness was received from the Board of Architectural Review, and plumbing and asbestos permits were issued.

A "formal complaint" about the construction was filed on or about November 8, 1996, at the Township's request, culminating six weeks of ongoing meetings between citizens and Township officials.

In early November 1996, Spatz, the Township planner, determined that: (1) "the project was incorrectly classified as [a] hotel rather than a multi-family structure"; (2) "the property owner/applicant should be required to resubmit a new permit application which contains a correct description of the project [and][t]he current permit should be withdrawn to allow for a resubmission"; and, (3) "[a]s is the general procedure, a stop work order should be issued to halt all ongoing work on the project." He further noted "multi-family uses are not permitted in the HD–C Zone (except as part of mixed use structures), [and] the proposal would require a use (and possibly other) variances from the Board of Adjustment."

As a result, a stop construction order was issued on November 8, 1996 reciting a zoning violation. Irvin received the order on November 12, 1996.

He responded by filing a Verified Complaint and Order To Show Cause in the Law Division on or about November 14. Irvin requested that the stop work order be vacated, and that it be

found that he had a valid, pre-existing use, and that all necessary approvals had been received. He did not first appeal the stop work order at the Township level, nor did he apply to the Board of Adjustment for a variance.

OGHA received permission to intervene in the Law Division action.

On January 7, 1997, the Law Division judge directed that the stop work order be vacated and that plaintiff's construction of apartments could proceed. In so ruling, the judge determined that the Township was barred by principles of estoppel from rescinding the approvals previously given.

OGHA's motion to stay pending appeal was denied. At the time of the Law Division action in late 1996, plaintiff claimed to have had the property under construction since April 23, 1996 and to have spent over $121,000 on the renovation.

There is no evidence in the record as to the present status of the project.

On appeal, OGHA argues that an estoppel cannot lawfully be applied against the Township, and that the stop work order must be enforced. OGHA properly points out that in order for an estoppel to be applied against the Township, its administrative officials must have made an "erroneous and debatable interpretation of the ordinance" in "good faith and within the ambit of [their] duty," upon which the owner of the property relies in good faith. *Jantausch v. Borough of Verona,* 41 *N.J.Super.* 89, 94, 124 *A.2d* 14 (Law Div.1956), *aff'd,* 24 *N.J.* 326, 131 *A.2d* 881 (1957).

However, "good faith" on the part of a zoning official is satisfied only by demonstrating the existence of "an issue of construction of the zoning ordinance or statute, which, although ultimately not too debatable, yet was, when the permit was issued, sufficiently substantial to render doubtful a charge that the administrative official acted *without any reasonable basis* or that the owner proceeded without good faith." *Jesse A. Howland & Sons, Inc. v. Borough of Freehold,* 143 *N.J.Super.* 484, 489, 363 *A.2d* 913

(App.Div.), *certif. denied,* 72 *N.J.* 466, 371 *A.*2d 70 (1976)[3]. In *Hilton Acres v. Klein,* 35 *N.J.* 570, 581–583, 174 *A.*2d 465 (1961), the Court reaffirmed the well established principle that "municipal action in the land use control field taken in direct violation of law or without legal authority is void *ab initio* and has no legal efficacy," and that no estoppel may arise in such situations. "[T]he protection of the public interest ... must be the first concern of the judiciary." *Id.* at 583, 174 *A.*2d 465; *see also* Cox, *New Jersey Zoning and Land Use Administration,* § 23–5, p. 420–21 (1997).

Here, the plaintiff's property is in the HD–C district, in which hotels and motels are only "conditional" uses, and apartments in mixed use commercial/residential structures are "accessory" uses. While apartments, as accessory uses in mixed residential/ commercial buildings, are allowed, apartment buildings as the sole use are not permitted in the historic-commercial (HD–C) zone.

Section 34–34.2b of the Township of Neptune Code (Code) provides that if the non-conforming use (i.e., the hotel) "is [in] a non-residential district, a change in occupancy may take place if the proposed new occupant's use is of a similar or more restricted nature, without a special permit from the Board of Adjustment." A "hotel" is defined in the Code, § 34–42, as "any building containing more than six (6) rooms or apartments that are rented or hired out to a *transient* clientele for sleeping purposes for compensation *for not more than sixty (60) days,* which rooms are reached from hallways common to more than two (2)...." (Emphasis supplied).

We find no authority or issue of construction of these ordinance provisions significant enough to counter OGHA's assertion that the officials initially "acted without any reasonable basis" for granting the permits to proceed. We recognize that the Law

---

[3] OGHA makes other arguments on appeal respecting abandonment, notice and exhaustion of administrative remedies. These need not be reached because of our rejection of the estoppel rationale on these facts.

Division judge apparently believed that as it was possible for Irvin to rent his apartment units out to transient clientele for sixty days or less to meet the definition of "hotel," this would allow the conversion of a long-abandoned hotel containing thirty-three hotel rooms and two apartments into a ten-unit apartment building, as a continuation of a non-conforming use. Irvin further argued, to the satisfaction of the trial judge, that the Township's Code provision, § 34–34.2b, permits a change in a non-conforming use located in a non-residential zone to another similar or more restricted use, "without a special permit from the Board of Adjustment."

It was made clear in *Avalon Home & Land Owners Assoc. v. Borough of Avalon*, 111 *N.J.* 205, 543 *A.*2d 950 (1988), indeed long before then, that continuance of a non-conforming use can be permitted only if it is a continuance of substantially the same kind of use as that to which the premises were previously devoted, absent a variance. *Id.* at 210–211, 543 *A.*2d 950. As *Avalon* shows, an ordinance provision which purports to vary the legislative zoning delegation by permitting, without variance, any change of a non-conforming use in a non-residential zone solely because it is a "more restricted" use is plainly invalid and distorts entirely the zoning process. As we said in *Township of Fairfield v. Likanchuk's, Inc.*, 274 *N.J.Super.* 320, 328, 644 *A.*2d 120 (App. Div.1994):

> It follows that expansion of nonconforming uses is not favored. *Urban v. Planning Board of Manasquan*, 124 *N.J.* 651, 656, 592 *A.*2d 240 (1991). Nonconforming uses "may not be enlarged as of right except where the change is so negligible or insubstantial that it does not warrant judicial or administrative interference." *Belleville*, 83 *N.J.* at 316, 416 *A.*2d 388. Any doubt as to whether an enlargement or change of the use is substantial rather than insubstantial is to be resolved against the property owner. *Ibid; Lehen v. Atlantic Highlands Zoning Board of Adjust.*, 252 *N.J.Super.* 392, 399, 599 *A.*2d 1283 (App.Div.1991). The power to allow expansion of the nonconforming use when the change is not negligible or substantial is reposed exclusively with the board of adjustment pursuant to the "special reasons" provision under *N.J.S.A.* 40:55D–70d(2). *See Avalon Home & Land Owners Ass'n.*, 111 *N.J.* at 211–12, 543 *A.*2d 950.

As noted above, the hotel had stood unused for more than ten years. The Township's zoning code had been in effect for more than six months when Irvin made his permit requests. Under § 34–34.2c of the Township Code, when the physical operation of a

non-conforming use has ceased for more than six months, it "[s]hall not be reestablished...." *N.J.S.A.* 40:55D–68 provides that a person interested in continuation of a nonconforming use must in those circumstances make application, not to an administrative officer, but to the board of adjustment[4]. *See also N.J.S.A.* 40:55D–70b; *Township of Fairfield, supra,* 274 *N.J.Super.* at 328, 644 *A.2d* 120.

Too, an apartment use is totally different from a transient hotel use. The uses are separately treated by statute. *N.J.S.A.* 55:13A–3(j), 55:13A–3(k), 40:55D–68.1.

Plainly, the stern tests for invoking estoppel against municipal officials established in *Hilton Acres, supra, Jantausch, supra,* and *Howland, supra,* have not been met. We must reverse the order entered by the Law Division. A less restrictive rule of law for invocation of estoppel against a municipality could invite intolerable vulnerability to mischief at the hands of unethical builders or construction officials. As there is no such indication in the present case, equity dictates that Irvin should be allowed to file a variance application, *nunc pro tunc.*

Reversed, with leave to so file.

---

[4] *N.J.S.A.* 40:55D–68 provides, in pertinent part:

> Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied and any such structure may be restored or repaired in the event of partial destruction thereof.

> The prospective purchaser, prospective mortgagee, or any other person interested in any land upon which a nonconforming use or structure exists may apply in writing for the issuance of a certificate certifying that the use or structure existed before the adoption of the ordinance which rendered the use or structure nonconforming. The applicant shall have the burden of proof. Application pursuant hereto may be made to the administrative officer within one year of the adoption of the ordinance which rendered the use or structure nonconforming or at any time to the board of adjustment.