800 A.2d 230

BELL ATLANTIC–NEW JERSEY, INC., PLAINTIFF–
RESPONDENT, v. RIVERDALE ZONING BOARD OF
ADJUSTMENT, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 29, 2002—Decided June 27, 2002.

Before Judges PRESSLER, PARRILLO, and PAYNE.

*Barbarula and Associates,* attorneys for appellant (*Jennifer Pompeo,* on the brief).

Respondent has not filed a brief.

The opinion of the court was delivered by

PAYNE, J.S.C. (temporarily assigned).

Bell Atlantic–New Jersey, Inc. (Verizon) operates a installation and maintenance work center and garage as a pre-existing non-conforming use in a PO–1 professional office district zone on the Newark–Pompton Turnpike in Riverdale. The site, which has been occupied by the telephone company for 44 years, is now used as a staging area for employees who install and maintain telecommunications lines and related equipment throughout much of Passaic, Morris and Sussex Counties and as a garage at which limited maintenance on repair vehicles is conducted. It is surrounded by a gas station, an armory, an electric service substation and a rail line. Following the addition in January 2000 of twenty

employees to its staff with a concomitant need for parking that could not be safely and conveniently satisfied on site, Verizon applied to the Riverdale Zoning Board of Adjustment for a use variance pursuant to *N.J.S.A.* 40:55D–70(d) to permit parking for a seven-year period for 40 employee cars on the property of a gas station, also operating as a nonconforming use, that abutted the access driveway to Verizon's site. The application was denied. Following appeal on the record below, Judge Stanton reversed and remanded the matter to the Zoning Board of Adjustment for approval of the use variance under appropriate conditions. The Board, in turn, appealed to the Appellate Division. We affirm the order of Judge Stanton substantially for the reasons set forth in his oral opinion of July 13, 2001.

We add the following comments. Under New Jersey's Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–1 to –136, a municipal Board of Adjustment may grant a "d" variance

[i]n particular cases for special reasons . . to permit (1) a use . . . in a district restricted against such use . . [or] (2) an expansion of a nonconforming use. . . .
[*N.J.S.A.* 40:55D–70.]

However,

No variance or other relief may be granted under the terms of this section, including a variance or other relief involving an inherently beneficial use, without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
[*Ibid.*]

In a series of decisions capped by *Medici v. BPR Co.*, 107 *N.J.* 1, 526 *A.*2d 109 (1987), the New Jersey Supreme Court has recognized that "certain commercial uses may inherently serve the general welfare in a particular community." *Id.* at 18, 526 *A.*2d 109. However, when an inherently beneficial use does not exist, a variance applicant seeking to demonstrate "special reasons" for approval of its application must establish that the site at issue is particularly appropriate for the proposed enterprise, thereby benefitting the general welfare. *Ibid.* Further, such applicants must establish by "an enhanced quality of proof" that the variance does not create a substantial detriment to the public good and "is not

inconsistent with the intent and purpose of the master plan and zoning ordinance." *Id.* at 21, 526 *A.*2d 109. *See also, e.g. Smart SMR v. Fair Lawn Bd. of Adj.* 152 *N.J.* 309, 704 *A.*2d 1271 (1998).

In its resolution denying Verizon's application, the Board of Adjustment rejected Verizon's argument that the proposed use was inherently beneficial, finding that although some telephone company uses had met that standard, this one did not.[1] Rather, the Board found, "the requested use ... [was] merely a commercial benefit for a commercial user" and "self-serving." Consequently, the Board required Verizon to demonstrate that its proposed use satisfied both the positive and negative criteria of *N.J.S.A.* 40:55D–70(d), and following multiple hearings, determined that it had failed to do so.

In large measure, the Board's decision that "special reasons" satisfying the statute's positive criteria had not been demonstrated was based upon its perception of Verizon as a solely commercial venture, whose lack of planning had led to the existing overcrowding, whose parsimony had thwarted a Board-advocated relocation to another site outside the municipality, whose flouting of existing zoning had led to the unauthorized use of the gas station site for parking during three years in the early 1990s, and whose inattention to the site had led to two occasions in which cars had been displayed for sale on the premises and one occasion in which truck maintenance had occurred in the facility's driveway, resulting in a small oil spill and overnight parking in an unauthorized location. The Board found that economic benefit to the owner of the station property, the convenience of Verizon employees, the relief of what the Board deemed to be self-inflicted overcrowding, and the high cost of alternate facilities did not constitute valid land use considerations.

---

[1] *Compare, e.g., Yahnel v. Bd. of Adjust. of Jamesburg,* 79 *N.J.Super.* 509, 192 *A.*2d 177 (App.Div.1963), finding a telephone switching station to be an inherently beneficial use, *with Smart, supra,* 152 *N.J.* 309, 704 *A.*2d 1271, holding that commercial mobile communications facilities do not enjoy the same status.

Similarly, the Board found that Verizon had failed in its burden of establishing by enhanced proof compliance with the MLUL's negative criteria: that the proposed use was not inconsistent with the intent and purpose of the master plan and zoning ordinances and that the variance could be granted without substantial detriment to the public good. In this regard, the Board again noted Verizon's occasional misuse of its property for the sale and repair of vehicles. It noted as well that the use of the gas station property for parking would result in two nonconforming uses on that property, thereby creating "additional responsibility to the applicant" in circumstances in which Verizon had demonstrated inability to comply with its primary site management responsibilities.

We find, as did Judge Stanton, that the Board's characterization of Verizon solely as a commercial venture whose proposed expansion would benefit itself alone was unduly narrow, and that this perceptual error fatally infected all of the Board's subsequent conclusions, rendering them arbitrary and capricious. *Kohl v. Mayor and Council of Fair Lawn*, 50 *N.J.* 268, 275, 283, 234 *A.2d* 385 (1967). In doing so, we see no need to determine whether the use proposed by Verizon was inherently beneficial, since we agree with Judge Stanton that Verizon has met the more rigorous burden of establishing adequate special reasons for its proposed use.[2] In this regard, we note both the recent vast expansion of

---

[2] We recognize the utility of denominating certain uses as "beneficial" since that characterization provides a convenient shorthand in clear-cut cases for the analysis of positive criteria that would otherwise be required. However we regard the designation only as an analytical short-cut, and thus ineffective in a case such as this in which the "beneficial" nature of the use is a matter of some dispute. Time spent trying to categorize this use could be employed more profitably by analyzing whether the use meets the statute's positive criteria—an analysis that is in any event either overtly or covertly required. We note, however, that a lesser level of proof that the use meets statutory negative criteria is required if the use is deemed beneficial—a distinction that does not appear to have been affected by recent amendments to *N.J.S.A.* 40:55D-70. *See L.* 1997, *c.* 145, amending *N.J.S.A.* 40:55D-70(c) and (d); *Medical Center at Princeton v. Princeton Twp. Zoning Bd. of Adj.*, 343 *N.J.Super.* 177, 211-13, 778 *A.2d* 482

the means for telecommunication and our society's increasing reliance on them. *Cf. Smart, supra,* 152 *N.J.* 309, 704 *A.*2d 1271, discussing the expansion of wireless communications. Such expansion carries with it a concomitant need for installation and repair, a need fulfilled by Verizon in this case by the operation of its tri-county utility and repair facility. Although we do not doubt that the telecommunications explosion has resulted in an increase in profits to Verizon, we regard as erroneous the Board's sole focus on this result as a ground for denying the requested variance. The increase in employees at the Riverdale facility resulted from public need as well as a profit motive.

When viewed in this fashion, the suitability of Verizon's proposal and its contribution to the public welfare is clear. In order to staff its maintenance and repair functions, Verizon required more employees. More employees resulted in increased parking needs. The Verizon site had space for 154 cars and utility trucks; Verizon needed 194. Both safety and efficiency were affected as a result. The space for the additional 40 cars existed on adjoining property that already was being used for non-conforming commercial purposes, and was not conveniently available elsewhere. The proposed site had previously been improved by gravel surfacing, perimeter fencing, and border planting.[3] The use of portions of the site for parking was not inconsistent with the permitted non-conforming use of the site as a gas station, since such stations commonly store cars awaiting repair. Moreover, the fact that the building on Verizon's property had reached maximum capacity and the fact that the variance was sought for a limited seven-year

(App.Div.2001). *But see, Funeral Home Management, Inc. v. Basralian,* 319 *N.J.Super.* 200, 213 n. 3, 725 *A.*2d 64 (App.Div.1999)

[3] We note in this regard that an issue of fact exists as to whether Verizon's prior use of the gas station location for parking, although contrary to existing zoning, was nonetheless authorized. We do not decide that issue, finding such a decision unnecessary in the circumstances. However, we do not wish this opinion to be read as authorizing use of property illegally as a permissible preliminary step to obtaining a "d" variance.

duration provided assurance that the proposed use was not an ever-expanding, never-ending one. When summed, these enumerated considerations clearly meet the positive criteria of *N.J.S.A.* 40:55D–70.

We find that the negative criteria have been met as well. We note in this regard that none of Verizon's immediate neighbors use their property in a manner that conforms to the zoning plan. Therefore, the character of the neighborhood, established through Riverdale's zoning ordinances, is not detrimentally impacted by Verizon's proposed use, as it might be if the non-conforming facility were to be built anew in a professional office zone or if expansion of parking onto a professional office site were to occur. The public good simply is not affected by this use. *See Medici, supra,* 107 *N.J.* at 22 n. 12, 526 *A.*2d 109; *Yahnel, supra,* 79 *N.J.Super.* at 519, 192 *A.*2d 177. *Compare Kohl, supra,* 50 *N.J.* at 283, 234 *A.*2d 385. Further, as previously noted, the much-needed occupancy of portions of the proposed site by the private vehicles of Verizon employees, thoroughly screened from view, differs little from occupancy by private gas station customers. As a consequence, the proposed change in use of a portion of the already non-conforming gas station property not only has negligible impact on its surroundings, it has little effect on municipal zoning. The mere fact that two non-conforming uses of the gas station property will exist if the variance is granted is insufficient to warrant denial of Verizon's request. *See, e.g., Lehen v. Atlantic Highlands,* 252 *N.J.Super.* 392, 599 *A.*2d 1283 (App.Div.1991); *Township of Fairfield v. Likanchuk's Inc.,* 274 *N.J.Super.* 320, 644 *A.*2d 120 (App.Div.1994), each recognizing the existence of two non-conforming uses on property at issue.

We recognize Riverdale's concern regarding the negligent manner in which Verizon has overseen its property and its prior zoning infractions. However, we agree with Judge Stanton that the Board can meet these concerns effectively through the imposition of conditions on the variance. As a result of its power in this regard, any negative effects of the expansion are substantially

lessened, and the benefits of the proposed use clearly outweigh any remaining negative impact that the use may have. *Smart, supra,* 152 *N.J.* at 324, 704 *A.*2d 1271, *quoting Sica v. Board of Adj. of Tp. of Wall,* 127 *N.J.* 152, 165–66, 603 *A.*2d 30 (1992).

We therefore affirm the determination of the court below, and remand to the Board of Adjustment for its approval of the variance under conditions that meet its previously-articulated concerns.